[L.A. No. 29714. In Bank. May 6, 1970.]

JULIA KINCAID MARTINDALE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EDGAR F. ERWAY, as Administrator, etc., Real Party in Interest.

**COUNSEL**

Lasky & Battaglia, Lasky, Battaglia & Levinthal, Jack M. Lasky and Joseph C. Battaglia for Petitioner.

John D. Maharg, County Counsel, and Douglas C. Miller, Deputy County Counsel, for Respondent.

Newton & Irvin, George W. Rochester and Richard B. Newton for Real Party in Interest.

**OPINION**

**McCOMB, J.**—Petitioner seeks a writ of mandate to compel respondent court to set aside its order denying her motion to dismiss a petition for revocation of probate of a purported will and codicils for failure to bring the matter to trial within two years (Code Civ. Proc., § 583).

*Facts:* In 1943, at the age of 65, Lucy May Wygant (hereinafter referred to as "decedent") became a resident of what is now known as Kingsley Manor, the Methodist Church's senior citizens residence in Los Angeles. In 1951, Charles H. Martindale and Olive M. Martindale, hus-

band and wife, and petitioner (then known as Julia Kincaid) also became residents of said home. Decedent and the Martindales remained in said home until they died; petitioner still resides there.

February 9, 1956, decedent executed a will leaving all of her stocks to Aileen Curtis Erway, her niece and only heir, who lived in New York. December 13, 1958, at petitioner's instance, decedent executed a codicil appointing petitioner executrix. December 19, 1958, she executed a power of attorney appointing petitioner her attorney in fact, and thereafter petitioner allegedly handled decedent's banking for her. January 10, 1959, decedent executed a codicil, written in petitioner's handwriting, in which she left petitioner her stock in the Valley National Bank of Phoenix, Arizona. Decedent died January 13, 1964. At the time of her death, the stock left to petitioner was worth over $29,000, which was more than half the value of decedent's estate.

January 21, 1964, petitioner filed a petition for probate of decedent's will, proper notice of which petition was sent to Mrs. Erway, decedent's niece. March 9, 1964, an order was made admitting to probate as the last will of decedent the three documents above mentioned and appointing petitioner as executrix. Mrs. Erway died intestate August 13, 1964, and August 26, 1964, Edgard F. Erway, her husband and only heir (the real party in interest in this proceeding) was appointed administrator of her estate. September 4, 1964, Mr. Erway, as administrator, petitioned for revocation of probate.

In the meantime, petitioner had also become involved with the Martindales. In 1957, the Martindales, who at that time had been married for 65 years and had no surviving issue, agreed to execute reciprocal wills, under which the survivor would leave the residue of their estates to the Shrine Hospital for Crippled Children. May 15, 1957, they executed such wills. May 4, 1959, Mr. Martindale executed a codicil appointing petitioner co-executrix of his will, but he later revoked it.

In the fall of 1959, both of the Martindales were admitted to the hospital section maintained and operated by the rest home on the same premises as was the apartment theretofore occupied by them. April 11, 1960, petitioner was appointed conservator of the person and estate of Mrs. Martindale, and she thereafter qualified as such and took possession of the property owned by the Martindales at that time and held by them as community or joint tenancy property.

June 16, 1962, Mrs. Martindale died. At the time of her death, the Martindales owned a substantial amount of stock, the certificates for which stood in their names as joint tenants with the right of survivorship. During

1962, after his wife's death, Mr. Martindale caused all the stock certificates to be reissued in his name alone as the owner thereof.

The Martindales had had a joint bank account at Crocker-Citizens National Bank, and after Mrs. Martindale's death the funds in said account were transferred to a new account in the joint names of Mr. Martindale and petitioner, with the right of survivorship. July 2, 1962, Mr. Martindale executed a power of attorney appointing petitioner as his attorney in fact, and petitioner thereafter handled some of his banking.

In March 1963 certain stock owned by Mr. Martindale was sold for $96,235.48, and the proceeds were deposited in the bank account established in the joint names of Mr. Martindale and petitioner. Thereafter, $90,000 was withdrawn from the account and deposited in nine accounts in the joint names of Mr. Martindale and petitioner established at various savings and loan associations. In January 1964, other stock was sold for $9,490.96, and in April 1964 additional stock was sold for $21,475.98. In each instance, the proceeds were deposited in the bank account established in the joint names of Mr. Martindale and petitioner. April 14, 1964, $20,000 was transferred from said bank account into a savings account at the same bank, which account was created at the time of said deposit and stood in the joint names of Mr. Martindale and petitioner.

April 22, 1964, Mr. Martindale and petitioner were married in petitioner's cottage located on the grounds of Kingsley Manor. At that time, Mr. Martindale was 91 years old and bedridden, and petitioner was about 70. April 26, 1964, at petitioner's instance, Mr. Martindale executed a will purporting to revoke his prior will and leave his entire estate to her. He died May 16, 1964. Thereafter, petitioner caused all the funds in the bank accounts and the savings and loan accounts to be transferred to her name alone.

Petitioner petitioned for probate of the will executed by Mr. Martindale April 26, 1964, and the Shrine Hospital for Crippled Children filed a contest thereof, alleging that at the time of the execution of the purported will Mr. Martindale was acting under the undue influence of petitioner. Subsequently, the Shrine Hospital filed a civil action attempting to impose a constructive trust on the property received by petitioner from Mr. Martindale.

April 17, 1969, petitioner filed a notice of motion to dismiss Mr. Erway's contest in the Wygant estate matter. At the time the contest was filed, Mr. Erway was represented by Ralph W. Hoffman. In a declaration filed by Mr. Hoffman in opposition to the motion to dismiss, he states that in 1965, after the answers of the various respondents had been filed, he interviewed

a representative of the Kingsley Manor and learned of petitioner's involvement with Mr. Martindale; that he was referred to Robert Sease, the attorney for the Shrine Hospital for Crippled Children; that Mr. Sease informed him of the reciprocal wills made by the Martindales and of petitioner's obtaining a power of attorney from Mr. Martindale, causing the sale of some of his stock, marrying him, and after his death filing a will in which she was substituted for the Shrine Hospital as beneficiary of the residue of his estate; that his investigation of the Wygant matter had revealed that petitioner had obtained a power of attorney from Mrs. Wygant and had the latter execute two codicils to petitioner's benefit; that with this information he and Mr. Sease decided that they should cooperate in the seeking of further information relative to petitioner; that he advised his client of the circumstances and told him that depositions should be taken; that his client informed him that he was in need of all the money he could gather at that time for an operation on his eyes and that Mr. Hoffman should try to obtain all the information he could from the other case; that the contest of Mr. Martindale's will was set for trial June 8, 1966; that Mr. Sease advised that all information from that case would be available to him; that he planned to attend the trial and use the Martindale case as one of the means of discovery in the Wygant matter; that the Martindale case was subsequently continued into 1967; that after Mr. Sease suffered a heart attack, it was continued to January 30, 1968; that Mr. Sease died on January 13, 1968; that in February 1968 he learned that the new trial date for the Martindale case was July 10, 1968[1]; that he then immediately filed a request for setting and on March 11, 1968, gave a notice of hearing for the setting of a contested case for March 15, 1968; that on that date both he and petitioner's attorney, Mr. Lasky, appeared and were advised by the court that they would be sent to another department for immediate trial; that both of them informed the court they were not ready for trial, as they had thought the hearing was for setting only, as indicated in the notice; and that they jointly asked for a continuance and were advised by the court that the best procedure was to have the matter go off calendar and reset when they were ready for trial.

Mr. Hoffman further stated that he was of the view that because of the similarity of the two matters it was reasonable to attempt to have the Wygant trial take place after the Martindale case was tried, but that after the death of Mr. Sease the value of the personal relationship with said attorney ceased, and it became obvious that there would be considerable delay in the trial of the Martindale case; and that he therefore immediately filed a request for setting herein.

---

[1]In April 1968, the Martindale case was terminated by a substantial settlement.

November 12, 1968, George W. Rochester was substituted as attorney for the real party in interest in place of Mr. Hoffman. A copy of the substitution was served on Mr. Lasky on February 21, 1969. March 1, 1969, Mr. Rochester filed a notice of motion to set, and the matter was eventually continued to May 2, 1969, for hearing.

In a declaration by Mr. Rochester in opposition to petitioner's motion to dismiss, he states that he associated Richard B. Newton as co-attorney for real party in interest, and they both proceeded to interview Dr. Cecil L. Shotwell, decedent's physician, Mr. George M. Morgan, the superintendent of Kingsley Manor, and Mrs. Mae Hodges, who was one of the decedent's nurses for many months; that such persons are willing to testify that at the time decedent signed the codicils to her will December 13, 1958, and January 10, 1959, she was "incompetent, confused from dementia senility and other maladies caused by her advanced age of 81 years"; that within a few weeks he served notice to take petitioner's deposition upon Mr. Lasky set for March 26, 1969; that Mr. Lasky and petitioner failed to appear, and as he was preparing sanctions, Mr. Lasky telephoned his misunderstanding as to the date and asked for a continuance to April 4, 1969, to which he agreed; that shortly before April 4, 1969, Mr. Lasky telephoned and asked that the deposition be continued to April 23, 1969, due to a conflict in his appointments, and he agreed to such continuance; that April 21, 1969, Mr. Lasky telephoned and asked for another continuance on the plea that it should wait until the disposition of the hearing on the motion to dismiss (filed by petitioner April 17, 1969) May 2, 1969, promising that he would stipulate to the earliest date subsequent to May 2, 1969, for the taking of the deposition; and that he agreed to Mr. Lasky's request.

Mr. Rochester asserts that he and Mr. Newton acted with due diligence after being substituted as attorneys for real party in interest; that "to dismiss the objections to the bequest to [petitioner], contrived by her preparation of the last Codicil to decedent's will and then having the mentally incompetent and confused decedent scrawl her almost illegible signature to the previously prepared document would be a miscarriage of justice and an illegal and unjust enrichment of a total stranger . . . with over $29,000"; and that the stock rightly belongs to real party in interest, under decedent's will dated February 9, 1956, which will was executed at a time when decedent was competent and had her normal mental faculties.

After lengthy arguments, respondent court June 10, 1969, denied petitioner's motion to dismiss and set the matter for trial August 25, 1969.

 Question: *Did the trial court abuse its discretion in denying the motion to dismiss the petition for revocation of probate?*

*No.* ██ In *Denham* v. *Superior Court, ante,* p. 557 [86 Cal.Rptr. 65, 468 P.2d 193], this court pointed out that section 583, subdivision (a), of the Code of Civil Procedure, giving the trial court discretion to dismiss an action for want of prosecution if it is not brought to trial within two years after it was filed, places no restrictions on the exercise of such discretion; that it is only when there is an entire absence of any showing constituting good cause for the delay, presented in the trial court upon the hearing of a motion to dismiss, that a writ of mandate to compel dismissal of the action may properly issue; and, further, that the trial court's discretion will not be disturbed unless it appears that there has been a miscarriage of justice.

██ In the present case, respondent court, in exercising its discretion, was amply justified in regarding the evidence set forth above as good cause for the delay in bringing the matter to trial. The result of the denial of the motion to dismiss, moreover, will be to have a trial on the merits of a matter in which petitioner has been charged with fraud and undue influence in obtaining the execution of a codicil by decedent leaving over half of her rather substantial estate to petitioner, a total stranger, in preference to her own niece. According to the declarations filed in behalf of real party in interest, he will present expert testimony that at the time of the execution of the codicil decedent was of unsound mind. Under the circumstances, it does not appear that respondent court's action will result in a miscarriage of justice.

The alternative writ of mandamus is discharged, and the petition for a peremptory writ is denied.

Mosk, Acting C. J., Peters, J., Tobriner, J., Burke, J., Sullivan, J., and Files, J.,* concurred.

---

*Assigned by the Acting Chairman of the Judicial Council.