**HOWMET CORPORATION, Plaintiff,**

v.

**TOKYO SHIPPING CO., Ltd., Phoenis Cia De Nav Sa, and the Mayor and Council of the City of Wilmington, Delaware, a municipal corporation of the State of Delaware, the Board of Harbor Commissioners, an Agency of the City of Wilmington (as aforesaid) and its Commissioners, Charles E. Mendinhall, Paul Cramer and C. T. Foster, Defendants.**

Civ. A. No. 3278.

United States District Court, D. Delaware.

Nov. 9, 1970.

Ernest S. Wilson, Jr., Wilmington, Del., for plaintiff.

William E. Wiggin, of Richards, Layton & Finger, Wilmington, Del., for defendant, Tokyo Shipping Co., Ltd.

H. James Conaway, Jr., and William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants, The Mayor and Council of Wilmington and Board of Harbor Commissioners.

1. At the time of the alleged damage plaintiff's corporate name was Howe Sound Company.

2. The Board of Harbor Commissioners operates the Wilmington Marine Terminal at the Port of Wilmington.

3. The three commissioners named were: Charles E. Mendinhall, Paul Cramer and C. T. Foster.

## OPINION

LATCHUM, District Judge.

This admiralty suit seeks to recover a monetary award in the amount of $31,-832.04 for alleged rust damage to a shipment of 240 coils of galvanized sheet steel shipped by sea from Chiba, Japan to Wilmington, Delaware. The plaintiff is Howmet Corporation,[1] a Delaware company ("Howmet"). The named defendants are Tokyo Shipping Co., Ltd. ("Tokyo"), Phoenis Cia de Nav Sa ("Phoenis"), The Mayor and Council of the City of Wilmington, a municipal corporation of the State of Delaware, the Board of Harbor Commissioners,[2] an agency of the City of Wilmington, and its three individually named Commissioners [3] (herein collectively referred to as "The City of Wilmington").

The steel coils in question, manufactured by Mitsui & Co., Ltd. ("Mitsui"), were delivered by Mitsui to Tokyo at Chiba, Japan on August 31, 1965 for shipment under a bill of lading to Mitsui's order for the account of Howmet to the Port of Wilmington. Tokyo, the carrier, placed the shipment on board of the S.S. Fenix, a cargo vessel owned by Phoenis but chartered by Tokyo.

Gannet Freighting, Inc., general agent for Tokyo, through its subagent, Lavino Shipping Company, made arrangements on October 13, 1965 on behalf of Mitsui for the discharge of the steel coils at the Wilmington Marine Terminal from the S.S. Fenix by J. A. McCarthy, Inc., stevedores.[4] On October 19, 1965, J. A. McCarthy, Inc. for Howmet's account made arrangements with the Wilmington Marine Terminal for storage of the 240 steel coils on the pier to await delivery by the Terminal to Howmet's trucking agent, Jones Motor Freight,

4. Mitsui was responsible for stevedoring costs for unloading the cargo of steel coils for Howmet at the Port of Wilmington and Tokyo was responsible for stevedoring costs for discharging other cargo in Philadelphia.

who was to remove the coils from storage.

The coils were discharged from the ship and placed on the pier at No. 1 berth at the Wilmington Marine Terminal on November 1–2, 1965. They remained on the pier in open storage in the custody of the Marine Terminal until November 10, 1965 when Howmet's trucking agent removed 77 of the steel coils from storage. When the coils were removed Howmet allegedly discovered them to be rusty. The remaining 163 steel coils remained at the Marine Terminal until sometime after December 31, 1965 when they were sold by Howmet.

On October 28, 1966, Howmet filed this suit. The complaint seeks damages from Tokyo, as charterer, and Phoenis, as owner of the S.S. Fenix, for breach of contract of carriage and negligence based on the allegations that the rust damage occurred while the coils were aboard the ship in transit under a bill of lading governed by the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. In the alternative, the complaint seeks damages from the City of Wilmington based on the allegations that the rust damage was caused by the negligence of the City of Wilmington in leaving the coils in open storage on the pier at the Marine Terminal in an exposed condition after they were discharged from the ship.

The case is presently before the Court on Tokyo's motion for summary judgment of dismissal. Tokyo contends that, because it had no notice of the alleged damage and was not served with process in this suit until January 12, 1970, Howmet has failed to prosecute this action against Tokyo with due diligence to the latter's prejudice and it therefore should be dismissed for laches as to Tokyo.

As previously stated the complaint was filed on October 28, 1966 for alleged damages to a cargo which was delivered to Wilmington on November 1–2, 1965. There is no question that suit against Tokyo was brought "within one year after the delivery of the goods or the date when the goods should have been delivered," the limitation period provided in the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6). But the record discloses that at the time suit was filed Howmet's attorney instructed the Clerk of this Court to issue a summons *only* to the Mayor of Wilmington and to the Board of Harbor Commissioners. The Clerk was not to issue process to Tokyo or Phoenis nor was he to issue a writ of attachment for the S.S. Fenix at that time.

The Mayor of Wilmington and the Board of Harbor Commissioners were duly served with process on November 1, 1966 and they thereafter appeared and filed answers on December 2, 1966. Discovery by interrogatories and depositions proceeded in the action between Howmet and the City of Wilmington.

The defendant Phoenis has never been served with any kind of process nor has it appeared in this action. It was not until December 23, 1969 that Howmet's attorney requested the Clerk to issue a summons to Tokyo to be served on the Delaware Secretary of State pursuant to Delaware's long-arm statute, 8 Del.C. § 382. This was accomplished on January 7, 1970. The Secretary of State in turn forwarded the summons and copy of the complaint by registered mail as required by statute to Gannet Freighting, Inc. in New York City, Tokyo's general agent in the United States.

■ Even though this suit against Tokyo was timely brought under the Carriage of Goods by Sea Act, supra, it is subject to dismissal under Rule 41(b), F.R.Civ.P., for failure to prosecute with reasonable diligence. "The mere institution of a suit does not of itself relieve a party from the charge of laches, and if he fail in the diligent prosecution of the action the consequences are the same as if no action had been taken." California Casualty Indemnity Exchange v. United States, 74 F.Supp. 408, 409 (S.D.Cal. 1947).

■ Ordinarily a suit will be barred by laches where there has been both an unreasonable delay in the institution or prosecution of the suit and undue prejudice to the defendant as a result of the

delay. See Kane v. Union of Soviet Socialist Republics, 189 F.2d 303, 305 (C.A. 3, 1951) cert. den. 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952); United Nations Relief & Rehabilitation Adm. v. The Mormacmail, 99 F.Supp. 552, 554 (S.D.N.Y.1951).

■ Thus, failure to make service of process within a reasonable time as contemplated by Rule 4, F.R.Civ.P., may amount to want of prosecution. Elizabethtown Trust Co. v. Konschak, 267 F. Supp. 46 (E.D.Pa.1967); Hoffman v. Wair, 193 F.Supp. 727 (D.Ore.1961); Huffmaster v. United States, 186 F. Supp. 120 (N.D.Cal.1960). "Failure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served. For, in the latter case, a defendant has at least a timely opportunity to investigate the claim and prepare its defense." Richardson v. United White Shipping Co., 38 F.R.D. 494, 495–496 (N.D.Cal.1965).

■ Applying these well-established principles to the present case, it is quite clear that Howmet has failed to prosecute this action against Tokyo with reasonable diligence and the action should be dismissed as to the defendant Tokyo.

An uncontradicted affidavit of Edward M. Miller, an officer of Gannet Freighting, Inc., general agent for Tokyo in the United States, in substance states (1) that after examining Gannet's available records, he found no notice of the alleged loss or damage to the cargo caused by rust and that none of its employees have any personal knowledge concerning the same, (2) that the first and only notice of the instant cargo damage claim was received on January 12, 1970 when a copy of the summons and complaint were received from the Delaware Secretary of State, and (3) that due to the delay in receiving the process and notice, it is impossible to investigate Howmet's claims because (a) the S.S. Fenix is no longer under charter to Tokyo, (b) neither the operations manager nor the claims manager, who were employed in 1965, are currently in Gannet's employ, and (c) Gannet's operations file for the voyage in question cannot be found and is presumed to be destroyed, the usual practice when claims are not received within several years after discharge of a cargo.

The service and notice presently involved were made more than four years after the alleged damage claim accrued and more than three years after the filing of the complaint and the expiration of the limitations period for bringing suit. It clearly appears that this long delay in accomplishing service or otherwise giving notice to Tokyo or its agent has prejudiced Tokyo's ability to properly investigate and defend itself against the claim.

Further, Howmet advances no explanation or reason whatsoever for the inordinately long delay in either giving notice or serving process upon Tokyo. At the time suit was filed, Howmet's attorney specifically instructed the Clerk not to issue process to Tokyo. The record is otherwise barren of any further attempt to cause any kind of process to be issued or served upon Tokyo until December 23, 1969. While it is true that Delaware's long-arm statute did not become effective until July 3, 1967, no effort was made to obtain service by that method until more than two years later. The Miller affidavit also states that vessels chartered by Tokyo have discharged cargo at the Port of Wilmington on the average of four to six times a year. Yet, no attempt has been made by Howmet to attach these ships nor has any other effort been made to serve Tokyo's sub-agent, Lavino Shipping Company, or its general agent, Gannet Freighting Inc., while in this jurisdiction.

In addition, the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6), provides in part as follows:

"(6) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage,

such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery."

It is true that failure to give such notice of cargo damage did not prejudice Howmet's right to bring suit within one year after delivery of the goods. However, requiring such advance notice serves a twofold purpose. First, it affords an opportunity to the carrier and vessel to promptly investigate any claim for damage while witnesses are available, or before it is otherwise too late, in order to defend against an exaggerated or fraudulent claim, and second, it raises a presumption of good delivery by the carrier which the claimant must overcome. Miami Structural Iron Corp. v. Cie Nationale Belge De T.M., 224 F.2d 566 (C.A. 5, 1955). Had the required notice been given, even with the subsequent long delay in service of process in this case, Tokyo likely would not have been prejudiced in the investigation of the alleged damage and the preparation of its defense. United Nations Relief & Rehabilitation Adm. v. The Mormacmail, supra, 99 F.Supp. at p. 555. In this case, no notice, written or otherwise, was ever received by Tokyo until January 12, 1970, more than four years after such notice was required.

Howmet opposes dismissal of the case based on the contention that Gannet Freighting, Inc., Tokyo's general agent, was aware of the loss claimed in this action shortly after the delivery of the steel coils. In support of this argument Howmet refers to the file of Lavino Shipping Company which shows that Gannet was sent a bill for stevedoring expenses for discharging the remainder of the cargo of the S.S. Fenix at Philadelphia. Included in this bill was a $908.46 item for "coopering, discharging and delivering" together with an explanation which read "This charge, as we have explained, was occasioned by the fact that the cargo was badly mixed in the holds and many of the bundles were broken." This cryptic language makes no reference to the Wilmington cargo and does not even remotely refer to the rust damage sued upon here.

Howmet also refers to a Hatch Survey undertaken on behalf of the charterer and owner of the S.S. Fenix in Philadelphia after she left Wilmington. This report refers to ship damage and not to cargo damage. The ship damage referred to in the survey was apparently caused when one of the large steel coils was dropped during unloading operations at Wilmington.

Nothing in either the survey report or the bill for coopering referred to alleged rust damage of Howmet's steel coils.

From the undisputed circumstances of this case, the Court finds that Howmet's inordinately long and unexplained delay in perfecting service of process in this case and in otherwise giving notice of the alleged loss to Tokyo prejudiced the latter from undertaking a prompt investigation of the claim and in the preparation of its defense. This long delay coupled with resulting prejudice to Tokyo clearly amounts to a lack of due diligence in prosecuting this suit against Tokyo. Accordingly, Tokyo's motion for summary judgment of dismissal will be granted.

An order will be entered in accordance with this opinion.