Albert NEALEY, Plaintiff–Appellant,

v.

TRANSPORTACION MARITIMA MEXICANA, S. A. and Maersk Lines, Defendants–Appellees.

No. 78–1009.

United States Court of Appeals, Ninth Circuit.

Oct. 21, 1980.

Eric L. Henrikson, Oakland, Cal., argued, for plaintiff-appellant; Thomas J. Boyle, San Francisco, Cal., on brief.

Francis L. Tetreault, Graham & James, San Francisco, Cal., argued for defendants-appellees; A. M. Young, Graham & James, San Francisco, Cal., on brief.

Before SNEED and SCHROEDER, Circuit Judges, and BLUMENFELD,* District Judge.

BLUMENFELD, District Judge:

Longshoreman Albert Nealey appeals from a dismissal with prejudice of his complaint for damages against Transportacion Maritima Mexicana, S. A. (Transportacion) and Maersk Lines (Maersk). The district court, in a two–sentence order, granted appellees' motion to dismiss under Fed.R. Civ.P. 41(b)[1] "because of failure to prosecute because of an unreasonable delay in service of process." We vacate the order and remand.

I.

Nealey's complaint alleged that in the course of his employment as a longshoreman, he was injured while working aboard appellees' vessel, the SS TOLUCA, on June 24, 1974. His complaint, seeking damages on the ground that his injuries were the proximate result of appellees' negligence, was filed on May 29, 1975 in the Superior Court for the State of California in and for

* Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. Fed.R.Civ.P. 41(b) provides in pertinent part:
For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . .

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

the City and County of San Francisco. This was some eleven months after the accident but within California's one–year statute of limitations for actions to recover damages for personal injuries.[2] Appellees were not served with the complaint and summons until April 1977, nearly two years after commencement of the action and nearly three years after the cause of action arose.

Appellee Transportacion answered on April 27, 1977, and about one week later, on May 5, petitioned for removal to the federal district court under 28 U.S.C. § 1441[3] on grounds of diversity of citizenship. Appellee Maersk followed the same course, both answering the complaint and joining in the removal petition on May 5. The parties then promptly commenced discovery proceedings, with both sides propounding and answering interrogatories and document production demands. Appellees also noticed various depositions. Thereafter, on July 18, appellees moved "for an Order dismissing this action on the ground of failure to prosecute." The district court granted the motion after a hearing and dismissed the action with prejudice on August 19, 1977. From this order, Nealey appeals.

## II.

■ We are faced at the outset with a dispute between the parties as to the appropriate standard of review. The case of *Anderson v. Air West, Inc.*, 542 F.2d 522 (9th Cir. 1976), supplies the proper guideline:

A district court's dismissal pursuant to Rule 41(b) will not be overturned unless the district judge clearly abused his discretion.... A rule of thumb as to the meaning of the abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.["]

*Id.* at 524 (citations omitted) (quoting *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954)).[4] In our view, the district court's judgment in the instant case was indeed in error.

## III.

■ Without question, a plaintiff's failure to serve process in a timely manner may in some cases amount to a failure to prosecute, *see Anderson v. Air West, Inc.*, *supra*, at 525, and a district court may dismiss an action on this ground, Fed.R.Civ.P. 41(b).[5] But the court's exercise of discre-

---

**2.** Cal.Civ.Proc.Code § 340(3) provides that "[a]n action . . . for injury to or for the death of one caused by the wrongful act or neglect of another" must be commenced within one year.

**3.** Title 28 U.S.C. § 1441 provides in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**4.** We do not much like the term "abuse" in this context. It has pejorative connotations not here appropriate. But it has become the customary word. Perhaps "misuse" is milder. What we mean, when we say that a court abused its discretion, is merely that we think that it made a mistake.
*Pearson v. Dennison*, 353 F.2d 24, 28 n.6 (9th Cir. 1963).

Judge Magruder's discussion in *Josephson*, *supra*, struck a similar chord in noting that the phrase "sounds worse than it really is." 218 F.2d at 182.

**5.** Appellant's brief repeatedly insisted on the nonapplicability of rule 41(b) to removed actions and stressed that his conduct ought to be tested under state law. At oral argument, however, his new attorney changed course, conceding the applicability of federal law, but relied mainly on state cases while doing so. Appellees have avoided the issue by arguing that the same result obtains under either federal or state law.

We believe that under the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, rule 41(b) is applicable to a removed action and may form the basis for dismissal of such an action. *See Grivas v. Parmalee Transportation Co.*, 207 F.2d 334, 337 (7th Cir. 1953), *cert. denied*, 347 U.S. 913, 74 S.Ct. 477, 98 L.Ed. 1069 (1954). However, in deciding whether a

tion in that regard is cabined by the requirement that it "weigh[ ] . . . the relevant factors." *Anderson v. Air West, Inc., supra*, at 524. As we recently explained:

A district court's decision on a motion to dismiss for want of prosecution requires weighing conflicting policies: on the one hand, the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to defendants from delay; on the other hand, the policy favoring disposition of cases on their merits.

*Citizens Utilities Co. v. AT&T*, 595 F.2d 1171, 1174 (9th Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979).

### A.

■ The first two of these four policy considerations suggest that rule 41(b) is in large part a housekeeping measure related to the efficient administration of judicial business for the benefit of all litigants with cases pending. In this respect, however, the federal and state judicial systems are not "identic," *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); inaction that crowds a state court docket does not, upon removal, necessarily translate to delay in the federal judicial system. Appellees entered the federal courthouse on their own command. They must now recognize that the conduct of business here is motivated by our own housekeeping concerns, and not those of our state court brethren. *See Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965) ("*Erie* and its offspring cast no doubt on the long–recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from com-

parable state rules."). Rule 41(b) cannot be invoked to assist the state judiciary in managing its business; if that was appellees' goal, they should have sought dismissal in the Superior Court. In fact, all parties began diligently to press this matter toward resolution even before removal was accomplished. *See*, p. 1283 *infra*. And after removal there was no inactivity, no failure to prosecute, that interfered with the federal goal of "secur[ing] the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. No *federal* housekeeping interest was advanced by depriving appellant of his cause of action. Consequently, administrative concerns should not have figured in the district court's calculus when it exercised its discretion in this case.

### B.

■ The two remaining policy considerations that support rule 41(b)–"on the one hand, . . . the risk of prejudice to defendants from delay; on the other hand, the policy favoring disposition of cases on their merits," *Citizens Utilities Co. v. AT&T, supra*, at 1174–are more pointedly relevant to the adversarial interests of the parties in a particular piece of litigation. Although delay in the prosecution of an action may be a factor to take into account in weighing each of the two alternative policies that may be urged in support of a rule 41(b) motion, the effect of a delay on the interests of the parties involve policy considerations different from those of judicial efficiency. They implicate a federal interest in fairness to litigants.

■ Our cases have tended to focus on the factors of prejudice and delay.[6] We

---

delay on the plaintiff's part *prior to removal* constitutes a failure to prosecute as a matter of federal law, *see*, pp. 1281–1282 *infra*, the district court should consider whether the plaintiff was within his rights under the relevant state law.

**6.** These are, incidentally, the same factors that are taken into account when a defendant seeks a dismissal under the doctrine of laches. *See Sandvik v. Alaska Packers Association*, 609 F.2d 969, 971–73 (9th Cir. 1979). Perhaps for

this reason, the parties seem confused over whether this case is governed by that doctrine.

The interests of precision will be served by our specifying that "the delay, which the defense [of laches] contemplates, is not delay in bringing claims to the attention of the defendant. It is '. . . *delay* on the part of the plaintiff *in instituting litigation* on his claims . . . .'" *Boris v. Moore*, 152 F.Supp. 602, 604 (E.D. Wis. 1957) (emphasis in original) (quoting *Brennan v. Hawley Products Co.*, 182 F.2d 945, 948 (7th

have held that "the failure to prosecute diligently is sufficient by itself to justify a dismissal," *Anderson v. Air West, Inc., supra*, at 524; that "[u]nreasonable delay creates a presumption of injury to appellees' defenses," *Alexander v. Pacific Maritime Association*, 434 F.2d 281, 283 (9th Cir. 1970); and that "whether *actual* prejudice exists may be an important factor in deciding whether a given delay is 'unreasonable,'" *Citizens Utilities Co. v. AT&T, supra*, at 1174 (emphasis in original). It is important to remember, however, that there is a competing concern at stake—specifically, the interest in disposing of cases on their merits. The pertinent question for the district court, then, is not simply whether there has been any, but rather whether there has been *sufficient* delay or prejudice to justify a dismissal of the plaintiff's case.

■ We recognize that neither delay nor prejudice can be viewed in isolation. The two factors are often integrally related. As we noted in *Pearson v. Dennison, supra*, at 28, "The longer the delay, the more likely prejudice becomes." It is therefore appropriate to analyze the relationship between the two.

A defendant's motion for dismissal under rule 41(b) bears some similarity to "an avoidance or affirmative defense." Fed.R. Civ.P. 8(c). Thus, it should be incumbent upon the movant to come forth with some facts indicating delay on the part of the plaintiff. *See Gomez v. Toledo*, 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). This will rarely be difficult; indeed, we would expect that such facts would appear on the face of the motion papers. But only *unreasonable* delay will support a dismissal for lack of prosecution,

see *Anderson v. Air West, Inc., supra*, at 524, and unreasonableness is not inherent in every lapse of time. In our judicial system, many delays are of an acceptable duration; others, though lengthy, may be unavoidable. Where these exist, there is no basis for a dismissal.

Even where a plaintiff has failed to do what he might have done earlier, he may have an explanation that excuses or justifies his failure. It is at this point that the extent of prejudice to the defendant, if any, becomes important. As Judge Friendly has explained in the analogous context of laches, *see* note 8 *supra*, "A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even when there has been some." *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 67 (2d Cir. 1963). Thus, delay alone should not be deemed to create a " 'presumption of prejudice,' save in the sense that if the plaintiff proffers no pleading or presents no proof on the issue of [reasonableness], the defendant wins." *Id.* at 66.

■ The plaintiff, of course, "has the ultimate burden of persuasion both as to the excuse for his own delay and as to lack of prejudice to the defendant." *Id.* at 67. However:

[W]hen such a plaintiff has presented evidence excusing his own delay, he should [not] be automatically barred unless he also presents anticipatory evidence to negate prejudice on the part of the defendant, *an issue as to which the defendant, with his greater knowledge, ought to be required to come forward.*

*Id.* at 66 (emphasis added).[7] This approach is consonant with "the ordinary rule

---

Cir. 1950)), *aff'd*, 253 F.2d 526 (7th Cir. 1958). "Failure to prosecute," in contrast, relates to delay by the plaintiff *after* institution of suit.

Nevertheless, because the policies underlying the two doctrines are much the same, it is not surprising that they have occasionally been treated interchangeably. *See, e. g., Howmet Corp. v. Tokyo Shipping Co.*, 318 F.Supp. 658, 660 (D. Del. 1970); *California Casualty Indemnity Exchange v. United States*, 74 F.Supp. 408, 409 (S.D. Cal. 1947).

7. [I]t is ... possible to assign the burden of producing evidence to the party who does not have the burden of persuasion. In that case, the rule does not only allocate issues between judge and jury; it has an effect even in a trial to a judge. The effect is to create a trigger mechanism: when the evidence on an issue is nonexistent or inadequate to meet the threshold requirement, the party with the burden of producing evidence loses; once there is enough evidence to cross that threshold, then the issue counts as a contested

[which], based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Campbell v. United States,* 365 U.S. 85, 96, 81 S.Ct. 421, 427, 5 L.Ed.2d 428 (1961) (citing *United States v. New York, N.H. & H.R.R.,* 355 U.S. 253, 256 n.5, 78 S.Ct. 212, 214, 2 L.Ed.2d 247 (1957)); *see Gomez v. Toledo, supra,* 446 U.S. at 639, 100 S.Ct. at 1923 (same as to burden of pleading).[8]

▮ Prejudice itself usually takes two forms—loss of evidence and loss of memory by a witness. In every case of delay, a district court in the exercise of its discretion should consider whether such losses have occurred and if so, whether they are significant. Not every loss, and particularly not every loss of memory, will prejudice the defense of a case. The evidentiary doctrines of "past recollection refreshed" and "present recollection recorded" exemplify how insignificant a loss of memory can be. The irretrievable loss of evidence may of course be more serious. Fairness dictates, however, that a plaintiff not be deprived of his cause of action if the missing evidence would have been lost even absent delay. Rather, the loss must in some way be causally related to the plaintiff's conduct.

▮ In summary, where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its discretion by weighing the relevant factors—time, excuse, and prejudice.

## C.

▮ In attempting to apply the principles set forth above to the circumstances of the instant case, we are hampered by the district court's failure to make findings of fact.[9] The record provides no support for a conclusion that appellant's delay was unreasonable. There is no question that the complaint was filed in state court within the time permitted by California's statute of limitations. Appellees base their position entirely on Nealey's failure to serve them promptly upon the filing of the complaint. Nevertheless, during the hiatus between commencement and service when this action was pending in the Superior Court, the applicable rules for service of process were those found in the California Civil Procedure Code. Cal.Civ.Proc.Code § 581a(a) provides for up to "three years *after the commencement* of [an] action" within which to serve process.[10] (Emphasis added).

---

issue and the loss falls on the other party, the one with the burden of persuasion, unless the evidence for his position satisfies that burden.
Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases,* 86 Yale L.J. 1299, 1300 n.3 (1977).

8. Somewhat like the issue of immunity, *Gomez v. Toledo, supra,* 446 U.S. at 641, 100 S.Ct. at 1924, "whether such [prejudice] has been established depends on facts peculiarly within the knowledge and control of the defendant," *id.* As the Supreme Court has recently observed, "To impose the pleading [and implicitly, the production] burden on the plaintiff would ignore this elementary fact and be contrary to the established practice in analogous areas of the law." *Id.*
Interestingly, Justice Rehnquist joined the unanimous opinion of the Court in *Gomez,* reading it "to leave open the issue of the burden of persuasion, as opposed to the burden of

pleading, with respect to a defense of qualified immunity." *Id.* —— U.S. at ——, 100 S.Ct. at 1924 (Rehnquist, J., concurring).

9. Although such findings are not required in this type of case, *Kung v. FOM Investment Corp.,* 563 F.2d 1316, 1318–19 (9th Cir. 1977), they would naturally be of assistance to a reviewing court. A good example is found in *Cristanelli v. United States Lines,* 74 F.R.D. 590, 591–93 (C.D. Cal. 1977).

10. In its entirety, Cal.Civ.Proc.Code § 581a(a) provides:
*No action heretofore or hereafter commenced by complaint shall be further prosecuted, and no further proceedings shall be had therein,* and all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, *unless the*

Hence, at the time of service appellant fell well within the bounds of the applicable law.[11]

■■■ Appellees' removal of the action to a federal court does not alter that fact. The Federal Rules "apply to civil actions removed to the United States district courts from the state courts *and govern procedure after removal.*" Fed.R.Civ.P. 81(c) (emphasis added). If process was properly issued

> summons on the complaint is served and return made within three years after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a general appearance in the action. [Emphasis added].

**11.** Consequently, this is not a case where, standing alone, "the statute of limitations establishes a deadline after which the defendant may legitimately have peace of mind." *Walker v. Armco Steel Co.,* 446 U.S. 740, 751, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980).

**12.** Title 28 U.S.C. '§ 1448 provides:

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case.

**13.** We look to California law as an aid in determining what is unreasonable as a matter of federal law. In this regard, it is of no consequence that another state statute allows "[t]he court, in its discretion, [to] dismiss an action for want of prosecution ... if it is not *brought to trial within two years* after it was filed." Cal.Civ.Proc.Code § 583(a) (emphasis added). Older cases such as *Black Bros. Co. v. Superior Court,* 265 Cal.App.2d 501, 71 Cal.Rptr. 344 (1968), suggested that dismissal might be proper under § 583 because of a delay in service even though the summons was served within the three years permitted by § 581a, but that line of cases was expressly called into question in *Denham v. Superior Court,* 2 Cal.3d 557, 563, 468 P.2d 193, 197, 86 Cal.Rptr. 65, 69 (1970). In *Denham* and its companion case, *Martindale v. Superior Court,* 2 Cal.3d 568, 468 P.2d 199, 86 Cal.Rptr. 71 (1970), the California Supreme Court held that "it is only when there is

and timely served under state law prior to removal, such service remains sufficient afterwards, as common sense dictates, 28 U.S.C. § 1448[12] assumes, and *Beecher v. Wallace,* 381 F.2d 372, 373 (9th Cir. 1967), implies. There is no justification for holding appellant's delay to have been unreasonable, since service was accomplished within the period allowed by California law.[13]

an entire absence of any showing constituting good cause for the delay ... that a writ of mandate to compel dismissal of the action may properly issue." *Id.* at 574, 468 P.2d at 203, 86 Cal.Rptr. at 75. *See generally The Supreme Court of California 1969–1970,* 59 Calif.L.Rev. 30, 70–80 (1971). The court further cautioned, "Although a defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation, the policy is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds." *Denham v. Superior Court, supra,* at 566, 468 P.2d at 199, 86 Cal.Rptr. at 71.

Another court has more recently explained:

"While sections 581a and 583 of the Code of Civil Procedure are designed to subserve the same general purpose–that is, to encourage the expeditious disposition of litigation–there are, nonetheless, some significant distinctions in their underlying policies. Section 581a concerns itself with the detriment accruing to a *defendant* insofar as his ability to institute discovery, preserve evidence and locate witnesses is concerned, when he is not given *timely* notice of the institution of an action.... Section 583 focuses upon the detriment to the *judicial system* as well as to a defendant attendant upon the tardy litigation of a claim."

*Ippolito v. Municipal Court,* 67 Cal.App.3d 682, 687, 136 Cal.Rptr. 795, 797–98 (1977) (emphasis in original) (citation omitted). As we have already noted, the federal court is not the proper forum in which to serve the housekeeping interests of the state courts, the primary goal of § 583.

One commentator has observed along similar lines that *Denham* and *Martindale,* "coupled with the trial courts' predisposition to favor trial on the merits and to avoid penalizing a litigant for the sins of his attorney, insure[ ] that procedural disposition of a case will occur only when the plaintiff is truly dilatory." *The Supreme Court of California, supra,* at 79.

Thus, to dismiss appellant's cause of action for want of prosecution would leave him completely without a remedy, for the conduct of his lawyer could hardly be considered malpractice. In those cases where we have held that "liti-

Although this alone should have been enough to defeat the motion, appellant's counsel nonetheless came forward in the district court and offered an explanation for failing to serve appellees promptly.[14] This excuse, weak though it may have been, was sufficient to trigger appellees' obligation to come forth with some evidence of actual prejudice. In their memorandum to the district court, appellees never suggested that actual prejudice had occurred; they relied solely on appellant's alleged failure to exercise due diligence and on the presumption of prejudice they claimed to result therefrom.[15] Only on this appeal did appellees urge, for the first time, that they had suffered demonstrable injury. For this reason, we need not reach the issue. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). However, even if the question were properly before us, the claims of prejudice are not persuasive.

Appellees' claims of actual prejudice fall into two general categories. First, they aver that although an onboard investigation was conducted on the date of the alleged accident at Transportacion's request, their file on the matter was "closed" when nothing further was heard within the one–year limitations period. Second, they note that during the nearly three years between appellant's alleged injury and service upon appellees, the route of the SS TOLUCA was changed, and that she has not called at any West Coast ports since May 1975. As a result, appellees submit that their ability to defend this action has been hampered.

As to the first, appellees could hardly expect to obtain better evidence of the circumstances of the accident than that furnished to them aboard ship on the very day it occurred. That they "closed" their file on the matter suggests both that a file exists and that it is retrievable. We do not doubt that if this were not the case—if, for instance, the file had been destroyed or discarded—appellees would have said so explicitly. Their unilateral decision merely to "close" an office file would not constitute prejudice attributable to appellant.

Likewise, the second ground urged by the appellees—that prejudice resulted from the SS TOLUCA having set sail—cannot be attributed to appellant. The vessel left San Francisco on May 28, 1975, and has not returned to any West Coast ports since then. But May 28 was nearly one month before the expiration of the statute of limitations and one day before appellant filed his complaint. Thus, even had Nealey served process on the very day he commenced the action, the ship and its crew would still have been long gone. Appellant's delay did not cause this difficulty, and he cannot be held responsible for it.

## IV.

Appellees rely heavily on *Cristanelli v. United States Lines, supra*, to support their position. There a district court granted the defendants' motion to dismiss for failure to prosecute where the plaintiff filed a complaint for personal injuries just one day short of the statute of limitations' expira-

gants are bound by the conduct of their attorneys," *Kung v. FOM Investment Corp., supra*, at 1318; *e. g., Anderson v. Air West, Inc., supra*, at 526, the potential for recovery in an action for legal malpractice was at least an implicit possibility.

**14.** According to his affidavit, counsel sought to protect his client and his client's reputation from a "widespread dragnet of investigation and discovery" that he was certain appellees' attorneys would launch immediately upon being served. He did not wish Nealey to be subjected to the pressure that would be created by "the implication [among his fellow workers, supervisors, neighbors, and acquaintances] that this longshoreman was looking for a lot of

money in a lawsuit, unless there were some substantial likelihood of his recovering such monies." There was no such likelihood unless the effects of his injuries would continue so as to result in some future disability. When he began to manifest symptoms indicating future disability, his attorney had process served.

**15.** Under Professor Underwood's model, *see* note 9, *supra*, appellees' motion should therefore have been denied. We go on to consider the claims of prejudice raised on appeal so as to demonstrate that the result would be no different had they raised these same claims below.

tion and failed to serve process until nearly two years after the alleged accident. These facts, so far as they go, bear some resemblance to those of the instant case. Appellees neglect, however, to reveal the precise facts on which the decision in *Cristanelli* turned. Indeed, when read in context, we believe the case supports appellant's position here. There it was stated:

> *Where plaintiff is presently prosecuting a claim with reasonable diligence, an action cannot be dismissed simply because at some earlier time plaintiff failed to act with diligence.* See *United States v. Myers*, 38 F.R.D. 194, 197 ([N.D.Cal.] 1964). However, here Plaintiff has failed to show that he is presently prosecuting his claim with reasonable diligence . . . Since October 19, 1976 [some seven months prior to the date of decision] when the United States Lines was finally served, Plaintiff has made no attempt to settle the claim *nor has he engaged in any discovery whatsoever.*

74 F.R.D. at 593 (emphasis added); *see Rollins v. United States*, 286 F.2d 761, 765 (9th Cir. 1961).

In contrast, appellant in the instant case began to prosecute his claim immediately following service on appellees. The record reveals that he filed extensive interrogatories and requests for production along with the complaint and summons on April 26, 1977 (even before removal), that he filed a jury demand on June 9, and that on June 22 and 23 he filed answers to appellees' interrogatories. On July 25 he moved to have a deposition noticed by one of the appellees taken before a judicial officer (supported by a memorandum, affidavit, and fifteen exhibits), and on the same day he filed a memorandum, supported by a lengthy affidavit, in opposition to appellees' motion to dismiss. During the same period, appellees served interrogatories on appellant, demanded production of documents, and noticed the depositions of three persons, including appellant. One might expect that if the delay in service had actually diminished appellees' access to information, they would have been unable to respond in large measure to appellant's ninety-six interrogatories. Yet the docket sheet indicates that

on June 14 and 21 respectively, Transportacion and Maersk did just that. Nowhere do appellees suggest that the lapse of time prevented them from complying adequately or from engaging in discovery themselves.

### Conclusion

The record furnishes no ground for suggesting that appellant's delay in service was unreasonable or that appellees suffered any actual prejudice as a consequence of the delay, and indicates that Nealey began diligently to press his claim once service was accomplished. Where a delay has not been unreasonable, where the defendant has suffered no actual prejudice, or where the plaintiff has cured his lapse in state court and been diligent in prosecuting his action following removal, the policy in favor of deciding cases on their merits should prevail over those which would favor dismissal. Thus, we believe that the bounds of discretion were exceeded in this case. Certainly the district judge could not have struck the balance in appellees' favor on these facts. Accordingly, the order of dismissal must be vacated and the case remanded.

SNEED, Circuit Judge (concurring in the result only):

I agree that the order of dismissal should be vacated and the case remanded because the district court's order provides no reliable clue as to how it weighed the conflicting policies set forth in *Citizens Utilities Co. v. AT&T*, 595 F.2d 1171, 1174 (9th Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979). The majority opinion may be read as permitting a dismissal for failure to prosecute under Rule 41(b), F.R. Civ.P., *only* when the delay was unreasonable and the plaintiff has failed to rebut the defendant's evidence of prejudice consisting either of a loss of evidence or a loss of memory by a witness. Even if other forms of prejudice will suffice, a matter left in some doubt by the majority, such an interpretation of Rule 41(b) would ignore the policies of promoting sound docket management and the public's interest in expeditious resolution of litigation.

The majority justify disregarding these policies on the ground that upon removal to

federal court diligent prosecution commenced. In their view no "federal housekeeping interest" is involved under these circumstances. I am not prepared summarily to banish these policies even under the facts of this case. The federal courts have some interest in not having brought to their door through removal claims not prosecuted vigorously before the state courts. To say, as the majority appear to do, that removal by a defendant eliminates the policies pertaining to docket management and prompt resolution of litigation not only improperly burdens the right of removal but also deprives the federal court of a portion of its power to promote those policies.

The result of disregarding these policies in this case is to enhance substantially the policy favoring disposition of cases on their merits. No one would contend that this is an unimportant policy. My concern is that it has been given undue influence by the majority. Perhaps my anxiety is misplaced and that the appearance of overemphasis has its origin in the somewhat unusual facts of this case. I should hope so. Nonetheless, it is necessary that my apprehensions be expressed.