**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| METROPOLITAN BANK & TRUST CO., | 11-15849 |
| Plaintiff-counter-defendant, | D.C. No. 01-cv-622-LDG-LRL |
| v. | MEMORANDUM[*] |
| DESERT VALLEY FINANCIAL LLC, | |
| Defendant-Appellee, | |
| PACIFIC BUSINESS CAPITAL CORP. | |
| Defendant-cross-claimant-Appellee, | |
| v. | |
| HUNTINGTON NATIONAL BANK, | |
| Counter-defendant-Appellant, | |

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

---

  [*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and submitted August 7, 2012
San Francisco, California

Before:    CALLAHAN and WATFORD, Circuit Judges, and KORMAN,
           Senior District Judge.[**]

Silver State Mobile Home sold mobile homes that were financed by Galaxy Financial Services. Pacific Business Capital Corporation ("PBCC") extended loans to Silver State and Galaxy in return for a blanket security interest in all their property, including the chattel paper created from the mobile home sales. Subsequently, Silver State and Galaxy sold the chattel paper from the mobile home loans to Mountain, who in turn sold it to First Commercial, who in turn sold it to Metropolitan Bank & Trust Company. Metropolitan conducted due diligence on Silver State and Galaxy prior to purchasing the chattel paper. The sales contract provided that Silver State and Galaxy continued to service the loans underlying the chattel paper and that if a mobile home owner defaulted on a loan, Metropolitan could substitute the defaulted loan for a new loan in good standing.

In August of 2000, Silver State and Galaxy collapsed and PBCC commenced a foreclosure sale of their assets, at which it purchased the chattel paper. On May 15, 2001, Metropolitan sued PBCC for conversion, alleging that its interests in the chattel

[**]    The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

2

paper were superior, and PBCC counterclaimed for conversion. After a bench trial, the district judge held that PBCC's security interest had priority and that Metropolitan failed to prove it was entitled to the exception in U.C.C. § 9-308(a) (Cal. Comm. Code § 9308), as it read prior to the 2001 revision, which, to the extent here relevant, would have given it priority if it took possession of the chattel paper without actual knowledge of PBCC's security interest. Because the district court did not correctly resolve this issue, we remanded the case to the district court for the purpose of determining whether Metropolitan proved that it took possession of the chattel paper without its *own actual* knowledge of PBCC's security interest, and if so, whether Metropolitan gave new value for the substitute mobile home loans that it took. On remand, the district judge held that Metropolitan failed to meet its burden of proving that it purchased the chattel paper without actual knowledge of PBCC's security interest. Metropolitan again appeals.

Metropolitan argues first that it does not bear the burden of proving the elements of § 9-308(a). This argument is contrary to our holding in the first appeal that "Metropolitan needed to prove that [it took possession of the chattel paper] without its own *actual* knowledge of PBCC's security interest." *Metropolitan Bank & Trust Co. v. Desert Valley Fin. LLC.*, 359 Fed. App'x 764, 765 (9th Cir. 2009) (emphasis in original). Moreover, we agree that it is "incumbent" upon a party

3

asserting a § 9-308(a) defense to prove that it had no knowledge of the prior security interest. *In re Comm. Mgmt. Serv., Inc.*, 127 B.R. 296, 306 (Bankr. D. Mass. 1991). "This approach is consonant with 'the ordinary rule [which], based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary.'" *Campbell v. United States*, 365 U.S. 85, 96 (1957) (quoted in *Nealey v. Transp. Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280-81 (9th Cir. 1980)); *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 538 (D.C. Cir. 1975); *Nemeth v. Pankost*, 224 Cal. App. 2d 351, 356 (Cal. Dist. Ct. App. 1964). A contrary approach would place PBCC in the difficult position of proving the extent of Metropolitan's knowledge.

Second, Metropolitian challenges the district judge's finding that it did not satisfy its burden of proving that it purchased the chattel paper without actual knowledge of PBCC's security interest. The district judge's factual findings following a bench trial are reviewed for clear error. Fed. R. Civ. P. 52(a)(6); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 915 (9 th Cir. 2005). The district judge did not clearly err. The evidence in the record established that, in response to a notice to admit that it had knowledge of PBCC's security interest since at least April 15, 1998, Metropolitan admitted that it obtained actual knowledge "at some point in time," and that it was conducting an investigation to determine the specific date on

4

which it did.  While this response did not constitute an admission that Metropolitan had actual knowledge, it allows for an inference that it may have had such knowledge at the time it took possession of the chattel paper.  Indeed, after providing this vague response, Metropolitan did not subsequently update their admission in a way that would have eliminated this inference.

Moreover, Metropolitan conducted extensive due diligence prior to purchasing the chattel paper.  The two critical witnesses to the due diligence conducted at Mountain Bank were James Taylor, Metropolitan's due diligence representative, and James Tyler, First Commercial's representative.  Mr. Taylor did not affirmatively deny awareness of PBCC's security interest but only testified that he did not recall whether or not PBCC was mentioned in the files he reviewed.  ER 344.  Mr. Tyler, who was present with Mr. Taylor when they both reviewed the files, testified that Mr. Taylor reviewed the "files of Mountain Community Bank regarding its purchase of the loans from Galaxy Financial Services."  ER 252-53.  Moreover, Mr. Taylor admitted to having a conversation, albeit brief, with a Galaxy employee, about PBCC as a creditor.

Judge Watford argues in his dissent that "the only information PBCC claims Metropolitan had access to during the due diligence review was legally insufficient to confer the required actual knowledge."  This assumes that the only documents in

the files would have been U.C.C. filings in which PBCC asserted a blanket security interest in all of Galaxy's chattel paper. This is not necessarily the case. There is evidence supporting the inference that the files could have contained pledge agreements granting PBCC a security interest in "all of the Manufactured Home Retail Installment and Security Agreements . . . now owned or hereafter acquired." These pledge agreements contained a list of specific mobile-home loans covered. *See, e.g.*, SER 180. We know what the pledge agreements generally contained because some, relating to different chattel paper, were produced by Galaxy as a part of discovery in related litigation. Significantly, Metropolitan failed to produce its files from this due diligence. This failure left unanswered evidence that the district judge was permitted to rely on in finding that Metropolitan failed to meet its burden.

In sum, this is a close case, the outcome of which is dictated by the burden of proof, the holes in Metropolitan's defense, and the deference owed to the district court's finding that Metropolitan failed to meet its burden of proof that it took possession of the chattel paper without actual knowledge of PBCC's interest.

**AFFIRMED.**

6

*Metropolitan Bank & Trust Co. v. Desert Valley Financial LLC*, No. 11-15849

WATFORD, Circuit Judge, dissenting:

Metropolitan produced evidence that its employees who conducted the due diligence on the loan contracts it purchased did not actually know of PBCC's security interest in those contracts. In response, the majority notes that Metropolitan failed to produce its due diligence file, and that one employee admitted having a brief conversation with a Galaxy employee about PBCC as a creditor. But the only information PBCC claims Metropolitan had access to during the due diligence review was legally insufficient to confer the required actual knowledge. Even if Metropolitan employees had seen the UCC filings in which PBCC asserted a blanket security interest in all of Galaxy's chattel paper, that would not have sufficed to impart actual knowledge as to any specific chattel paper. *See* U.C.C. § 9-308, Official Comment 3 ("Mere knowledge of an Article 9 filing against chattel paper does not give knowledge of the existence of a security interest in the chattel paper."); *see also* 9 Ronald A. Anderson & Lary Lawrence, Anderson on the Uniform Commercial Code § 9-308:7 (3d ed. 1999) ("Even knowledge that another party has filed a financing statement covering chattel paper is not sufficient to defeat the purchaser's priority.").

In my view, the PBCC Pledge Agreements Metropolitan received on October 1, 1999 do not change the analysis because for the most part they also

describe only a general security interest in chattel paper. (The few loan contracts that were specifically identified are not at issue in this case.) Nor do I think Metropolitan's failure to update its admission that it obtained actual knowledge "at some point in time" is of any consequence, because PBCC never moved in the district court to require a further response or to have the matter deemed admitted. Thus, I would hold that Metropolitan satisfied its burden of proving that it lacked the requisite actual knowledge.