CITIZENS UTILITIES COMPANY et al.,
Plaintiffs-Appellants,

v.

The AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al.,
Defendants-Appellees.

No. 77–1941.

United States Court of Appeals,
Ninth Circuit.

April 30, 1979.

Weyman I. Lundquist, Esq., San Francisco, Cal., for plaintiffs-appellants.

Robert M. Westberg, San Francisco, Cal., for defendants-appellees.

---

5. Morgan's appellate counsel was not his trial counsel.

Before CARTER, Senior Circuit Judge, BRIGHT * and CHOY, Circuit Judges.

BRIGHT, Circuit Judge.

Appellants, Citizens Utilities Company and its California subsidiary (collectively, Citizens), filed this antitrust action against the appellees, American Telephone & Telegraph Company (AT&T), the Pacific Telephone & Telegraph Company (Pacific) and Bell Telephone Company of Nevada (collectively, Bell), in October 1960. Sixteen years later, this lawsuit had not yet been tried. On January 3, 1977, the district court[1] dismissed Citizens' action on two alternative grounds: (1) want of prosecution by Citizens, under Fed.R.Civ.P. 41(b); and (2) lack of jurisdiction, because the Federal Communications Commission (FCC) possesses either primary or exclusive jurisdiction over the subject matter of the action. Citizens appeals. We affirm the judgment of dismissal.

I. *Factual Background.*

This action has its genesis in the period 1950–1957, when several disputes arose between Citizens and Bell concerning the division of revenues from "interchanged calls" between their systems, that is, telephone calls passing over interconnecting lines of Citizens and one of the Bell companies.[2] Citizens, contending that its return on the use of its facilities for interchanged calls was unreasonably low, sought, among other things, change to a new method of dividing revenues, based upon a study of Citizens' expenses and investment relating to calls interchanged with Bell. In 1957, appellee Pacific rejected a cost study plan proposed by Citizens. Citizens agreed to a plan proposed by Pacific, but it inserted a clause in the agreement reserving its claims that prior divisions of revenue were unfair.

In October 1960, Citizens brought this action under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, 15, 26 (1976), alleging that the appellees combined and conspired to fix prices and to discriminate against Citizens by presenting a united front at negotiations with Citizens regarding the division of revenues from interchanged calls. Citizens has supplemented its complaint from time to time to allege continuing conspiracy and damages.

A detailed summary of the sixteen-year record of proceedings in this case from its filing until its dismissal in December 1976 would serve no useful purpose here. A few matters, however, deserve mention.

The parties conducted extensive discovery between 1961 and 1971. However, the record fails to show any substantial activity by either party during several periods, for example, from June 1961 to February 1963, and most of 1965 and 1969.[3]

---

* Honorable Myron H. Bright, United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

2. In practice, Citizens and Bell divide revenues from calls interchanged between their systems by voluntary agreement.

   The Federal Communications Commission (FCC) apparently possesses power, under the Federal Communications Act, 47 U.S.C. §§ 151 *et seq.* (1976), to regulate the division of revenues from interchanged calls, at least where it finds a particular method of division to be "unjust or unreasonable." *See* 47 U.S.C. §§ 201(a) and (b), 205(a). However, according to Citizens, the FCC has rarely, if ever, exercised that power.

3. Apparently as a result of Citizens' inaction in 1961–63, United States District Judge Albert C. Wollenberg issued an order on October 11, 1963, directing Citizens to show cause why its complaint should not be dismissed for lack of prosecution. Citizens' response indicated that discovery in the case had begun following a letter sent by Citizens to Bell on February 18, 1963, requesting production of documents.

   According to the affidavit of James Michael, an attorney for Bell, the parties suspended discovery in this case during 1965 while the lead counsel for both Bell and Citizens were engaged in the lengthy trial of another antitrust action.

   The October 6, 1969 affidavit of Maxwell Blecher, attorney for Citizens, explained the 1969 period of inactivity as due in part to difficulty in scheduling the deposition of Citizens' president, Richard Rosenthal. Citizens had unsuccessfully sought to quash Bell's notice of deposition of Mr. Rosenthal.

Over this eleven-year period from 1961–1971, Citizens' efforts to speed up the discovery process consisted of four motions for a preliminary pretrial conference aimed at establishing a schedule for completion of discovery, filed in May 1966, November 1968, August 1970, and July 1971.[4] Bell resisted Citizens' 1966 motion, contending that it was far from completion of discovery, and that motion was denied. The 1968 motion was also denied, for reasons which do not appear in the record. Citizens withdrew its 1970 motion after the parties stipulated to arrange a later pretrial conference and to "work out a timetable for the completion of discovery * * *." Bell effectively joined in Citizens' 1971 motion for a pretrial conference, though it also stated its intention to move for summary judgment on the ground that the federal courts lacked jurisdiction of the action.

On August 27, 1971, in accordance with the parties' stipulation, United States Senior District Judge George B. Harris entered a pretrial order establishing a briefing and hearing schedule for Bell's motion for summary judgment. Proceedings concerning two successive motions by Bell for summary judgment occupied the parties until April 1973. Judge Harris denied both of those motions.

The parties eventually stipulated to set the action for trial on March 18, 1974. However, in early March, Judge Harris advised the parties that because of a calendar problem he could not preside over the trial on March 18. Judge Harris suggested that the parties consent to a trial before a magistrate or that a new judge be assigned. Bell insisted upon trial before a judge, and the district court ordered the trial "off calendar."

Meanwhile, on February 20, 1974, Citizens' president, Richard Rosenthal, wrote to Citizens' lead attorney, Joseph F. Alioto, suspending his authority to act on behalf of Citizens. Citizens states in its brief that its dispute with Alioto resulted from his time-consuming political activities, "depriving Citizens of the [legal] services for which it had contracted." [5]. Alioto filed a motion to withdraw as Citizens' counsel on April 5, 1974.

The record shows no further activity in the case until more than two years later, on June 4, 1976, when Citizens' present counsel filed their appearance. Citizens states that it spent that two-year interval searching for new counsel. During that period, no particular district judge had responsibility for the case. However, within two weeks of a request by Citizens' new counsel for a status conference, the case was assigned to United States District Judge Warren J. Ferguson.

At a status conference on September 20, 1976, Bell moved to dismiss the action under Fed.R.Civ.P. 41(b) for Citizens' failure to prosecute.[6] Following a hearing on December 17, 1976, Judge Ferguson granted Bell's motion to dismiss, stating that from his reading of the record "16 years is too long"

---

4. Citizens apparently abandoned its first motion for a pretrial conference, filed in March 1974.

5. Mr. Alioto was then a candidate for governor of California.

In a letter to Judge Harris, dated March 12, 1974, Lawrence Alioto, Joseph Alioto's brother and law partner, stated:

The revocation of authority occurred at a time when this case was scheduled for trial on March 18. The case is completely ready for trial, and nothing remains but to try it. We are anxious to do so, whether to a master or to Your Honor.

While Mr. Rosenthal has withdrawn our authority to act, he has not discharged us or sought substitute counsel. I have advised Mr. Rosenthal that he must either authorize us to proceed, or else obtain substitute counsel. We much prefer the former course. * *

I am hopeful that this letter will cause Mr. Rosenthal to break the absolute stalemate in which he has placed this case. If we do not hear from him within a reasonable time, however, an appropriate motion will be filed.

6. Fed.R.Civ.P. 41(b) provides in pertinent part:

For failure of the plaintiff to prosecute * *, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * * operates as an adjudication upon the merits.

for this case, and such excessive delay "is simply a matter of pure procrastination on behalf of the plaintiff \* \* \* ." Judge Ferguson also held in the alternative that jurisdiction in the case lay in the regulatory agencies and not in the court. In his unpublished order denying Citizens' motion for reconsideration, filed on April 1, 1977, Judge Ferguson further stated:

> 16 years have passed since this action was instituted; the events at issue stretch back 25 to 30 years. Numerous witnesses have died; memories have faded. Actual prejudice, not merely presumed prejudice, has resulted. Here we do not have a single 16 year spell of inaction, but rather spaces throughout the course of litigation where procrastination, for whatever reason, slowed proceedings. Plaintiffs have an obligation to press forward with litigation, even if defendants in part slow their progress. They failed to do that here.

Final judgment of dismissal was entered on January 14, 1977. Citizens brought this timely appeal from the judgment and the district court's refusal to reconsider, contending that the district court abused its discretion under Rule 41(b) and erred in concluding that it lacked jurisdiction.

II. *The Dismissal for Failure to Prosecute.*

■ A dismissal under Rule 41(b) for failure to prosecute will be reversed only for abuse of discretion. *E. g., Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir. 1976); *Alexander v. Pacific Maritime Association,* 434 F.2d 281, 283 (9th Cir. 1970).

■ A district court's decision on a motion to dismiss for want of prosecution requires weighing conflicting policies: on the one hand, the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to defendants from delay; on the other hand, the policy favoring disposition of cases on their merits. *See Pearson v. Dennison,* 353 F.2d 24, 28–29 (9th Cir. 1965). Although prejudice to defendants may be presumed from "unreasonable" delay, *e. g., Alexander, supra,* 434 F.2d at 283, whether *actual* prejudice exists may be an important factor in deciding whether a given delay is "unreasonable." *Pearson v. Dennison, supra,* 353 F.2d at 29.

■ In this case, the district court found that actual prejudice resulted to Bell from delays caused, at least in part, by Citizens' inaction.[7] The court focused not only upon the period from March 1974 to June 1976, when Citizens allegedly was searching for new counsel, but also upon earlier periods of inactivity. The court recognized that foot-dragging by Bell may have contributed to the numerous delays, but it plainly indicated that Citizens failed to meet its "obligation to press forward with [the] litigation."

We have carefully reviewed the record. The district court's findings of prejudice to Bell and to Citizens' lack of diligence are supported by the record. Although the issue is a close one and might have been decided differently, we cannot say that the decision to order a dismissal of this action falls outside the discretion conferred upon a federal district judge under Fed.R.Civ.P. 41(b).

Accordingly, we affirm the judgment of dismissal.[8]

JAMES M. CARTER, Senior Circuit Judge, dissenting:

I respectfully dissent. I think the majority is wrong in affirming the trial court's

---

7. Bell presented evidence at the hearing on its motion to dismiss that many important defense (and also prosecution) witnesses are either deceased, incapacitated with illness or age, or retired and living outside subpoena range.

   Citizens contends that Bell's claim of prejudice is illusory because most of the key evidence in the case would be documentary, and testimony of nearly all of the "unavailable" witnesses is preserved in depositions.

   In rebuttal, Bell notes that most of the documents designated by Citizens as probable evidence were sent or received by persons who may be unavailable to testify and that a deposition is a poor substitute for live testimony.

8. In view of our affirmance of the Rule 41(b) dismissal, we do not reach the issue of whether the district court properly invoked the doctrine of primary jurisdiction.

dismissal of this action for failure to prosecute.

The majority adequately discusses the early years of the case. The defendants, like all defendants in antitrust cases, were not anxious to go to trial.

We pass up those early years when both sides were probably equally at fault as to delay, and come to the period beginning in 1971. There is no dispute that defendants deliberately delayed the action at various times. Defendants brought various motions for summary judgments, two during the 1971–73 period. Defendants then sought the remedy of an extraordinary writ to this circuit to review the trial court's denial of the motion for summary judgment. The request for the writ was denied and defendants sought certiorari. It was denied in December of 1973, nine months before the trial was to begin on March 18, 1974.

Previously, the plaintiffs had filed five motions for a pretrial conference. Defendants resisted efforts to put the case on a schedule. Plaintiffs' fifth motion for a pretrial conference was made in 1971. Plaintiffs sought (1) a cutoff date for discovery; (2) a date for a final pretrial conference, and (3) a date for trial. Defendants requested instead an establishment of a filing and briefing schedule and a date for their proposed motion for summary judgment.

In argument before us on the appeal, it developed that plaintiffs had moved for the designation of a single judge to handle *all further proceedings and the trial of the case*. The defendants admitted that they had *opposed* the motion.

This action by the defendants is singularly demonstrative of their purpose to delay. For years the United States District Court at San Francisco had used the master calendar system and had refused to assign cases to a single judge for all purposes, including trial. It resulted in causing several judges, seriatim, to look into a particular case and make a decision. This resulted in a great loss of time. The writer, sitting pro tem. on the circuit in 1956, wrote *Yanish v. Barber*, 232 F.2d 939, showing that four different district judges had worked on the case and made decisions and orders. See pp. 942–943, listing Judges Lemon, Murphy, Harris, and Hamlin.[1]

We come now to the proceedings in the present case in the years 1974 to 1976. In late February or early March of 1974 the case was ready for trial. Judge Harris advised the parties he would not try the case, then set for March 1974. He presented two alternatives: (1) assign the case to a magistrate for trial (which would have required the consent of both parties), or (2) assign the case to another judge. The trial date was vacated by Judge Harris.

*After* the vacation of the trial date difficulties intensified between plaintiffs and their counsel, Joseph Alioto.[2] He filed a motion to withdraw as attorney, meanwhile claiming a lien for attorney's fee on plaintiffs' records.

In response to these developments, Judge Harris wrote to Chief Judge Chambers asking to be relieved and that another judge be designated. Judge Chambers suggested the fee dispute be severed and designated Judge Battin to handle it. He stated "it would take a little longer to find a trial judge." Judge Battin's designation expired July 31, 1974, and no judge was assigned to the trial of the case.

The case was thus in limbo. It was *not* on *any* judge's pretrial or trial or dismissal list.

Meanwhile, plaintiffs were diligently seeking a replacement for Alioto. In January 1976, present counsel was obtained. In June, Judge Harris again wrote Judge Chambers requesting the assignment of another judge to try the case. On June 29,

---

1. The writer, as a member of the Pretrial Committee of the Judicial Conference of the United States, had participated in efforts to get the Northern District of California to adopt a "single judge" rule. The *Yanish* case was an opportunity to demonstrate the problem. The Northern District of California presently, and for some time, has assigned major cases to a single judge for all proceedings.

1976, Judge Chambers assigned Judge Ferguson to the case.

The defendants' response was to file the motion to dismiss for lack of prosecution. While the motion was pending both sides filed trial briefs of law and fact, looking in part toward the trial of the case. But in their brief, defendants, for the third time, resurrected their claim (twice previously rejected) that the Federal Communications Commission or the California Public Utilities Commission had jurisdiction.

The majority calls the decision on failure to prosecute "a close one." I agree. On the record, major contributions were made by defendants to the delay. The parties were ready for trial in 1974. Judge Harris refused to try the case, and there was a gap of two years while the case was not assigned to any judge.

On this record I think it a miscarriage of justice to dismiss the action. In the early years both parties were responsible for delays. But it was a big case and such cases move slowly. Defendants had never claimed delay by plaintiffs. No motion to dismiss was made on such ground.

But in the period after 1971 defendants were clearly guilty of delaying tactics, as shown above. Still, no motion to dismiss was made until a new judge was assigned. As plaintiffs have argued, the defendants had run out their maneuvers of motions for summary judgment and for lack of jurisdiction, and now it was either *trial* or a motion to dismiss for delay. To reward defendants for their delaying conduct seems to me unthinkable. It was a breach of discretion to dismiss.[2]

I would reverse and let the case be tried.

---

2. The district court found prejudice to the defendants. The majority fairly presents both sides of the issue in the last two paragraphs and note # 7 of the opinion. But because of the defendants' delaying tactics, I think the finding is wrong.