OPINION OF THE COURT
GIBBONS, Circuit Judge:
We deal here with four appeals which were by order of this court, on January 11, 1983, consolidated. One appeal is before us on remand from the Supreme Court, which on December 13,1982 vacated our judgment in In re Ashe, 669 F.2d 105 (3d Cir.1982), and remanded for further consideration in light of United States v. Security Industrial Bank, 459 U.S. -, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). The other three appeals are before us for the first time. All four involve the effect of section 522(f)(1) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 522(f)(1) (Supp. Ill 1979), on liens claimed by the Commonwealth National Bank on property of a debtor by virtue of confessions of judgment notes. In each case the bankrupt claimed and the Bankruptcy Court allowed the avoidance of the claimed lien pursuant to section 522(f)(1). In each case we affirm.
I.
The Bankruptcy Reform Act provides that “... an individual debtor may exempt from property of the estate ... property that is specified in subsection (d) ... ” 11 U.S.C. § 522(b)(1). Subsection (d) permits exemption of “[t]he debtor’s aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debt- or ... uses as a residence ...” 11 U.S.C. § 522(d)(1). The Act also provides that “[njotwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is — (1) a judicial lien ...” 11 U.S.C. § 522(f)(1). The Bank contends that if section 522(f)(1) were to be applied to the liens it asserts in these four cases it would be unconstitutional under Louisville Joint Stock Land Bank v. Rad-ford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). In our prior decision, 669 F.2d 105, we rejected that contention with respect to the exemptions claimed by Charles E. and Susan J. Ashe for their residence in Dauphin County, Pennsylvania. The Supreme Court granted certiorari, and without opinion vacated our judgment and remanded “for further consideration in light of United States v. Security Industrial Bank.’’[1]
In the Security Industrial Bank case the Court considered the effect of section 522(f) on purchase money security interests perfected prior to the enactment of the 1978 Act. It held that because the application of section 522(f) to such perfected interests raised a non-frivolous constitutional issue under Radford the rule of statutory con *866 struction announced in Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914), should govern; absent a clear expression of congressional intention, a statute purporting to divest property interests in specific property would be applied only prospectively. For reasons which follow, we hold that in none of the four cases in which the Bank appeals can the Holt v. Henley rule apply, because that rule can have no application to judicial liens.
II.
In the Bankruptcy Act of 1898, Act of July 1, 1898, 30 Stat. 544, c. 541, section 67(f) provided for the automatic invalidation of all liens obtained by legal proceedings against a person who was insolvent within four months prior to the filing of a petition in bankruptcy. 30 Stat. at 565. Since the practice of taking confession of judgment notes was common in many states, it was inevitable that the question of their effectiveness against section 67(f) would arise. In Wilson v. Nelson, 183 U.S. 191, 22 S.Ct. 74, 46 L.Ed. 147 (1901), the Court held that for purposes of that section the lien of a judgment note arose when an actual judgment was entered against the bankrupt, not when the warrant of attorney to confess judgment was executed. The Court observed:
In the case at bar, the warrant of attorney to confess judgment was indeed given by the debtor nearly thirteen years before. But being irrevocable and continuing in force, the debtor thereby, without any further act of his, “suffered or permitted” a judgment to be entered against him, within four months before the filing of the petition in bankruptcy, the effect of the enforcement of which judgment would be to enable the creditor to whom it was given to obtain a greater percentage of his debt than other creditors; and the lien obtained by which, in a proceeding begun within four months, would be dissolved by the adjudication in bankruptcy, because “its existence and enforcement will work a preference.”
183 U.S. at 198, 22 S.Ct. at 77. Wilson v. Nelson presented a retroactivity question, for the warrant to confess judgment was executed in 1885, nearly thirteen years before the enactment of section 67(f). The Court nevertheless held that section 67(f) applied, although four dissenting justices urged that as a matter of statutory interpretation there should be a “clear and unmistakable” declaration that the section was intended to change prior law. 183 U.S. at 211, 22 S.Ct. at 82 (Justice Shiras, dissenting). See also Grant v. National Bank of Auburn, 232 Fed. 201 (N.D.N.Y.1916); Grant v. National Bank of Auburn, 197 F. 581 (N.D.N.Y.1912); In re Richards, 96 Fed. 935 (7th Cir.1899).
The chief effect of section 67(f) was to preserve for the debtor’s estate, and thus for general unsecured creditors, property subjected to judicial liens. In Chicago, Burlington & Quincy R.R. v. Hall, 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306 (1913), however, the Court considered the interrelationship between section 67(f) and state exemption laws. Under section 6 of the 1898 Act, the Bankruptcy Court was directed to apply the exemption laws of the state of the bankrupt’s domicile. Act of July 1,1898, ch. 541, § 6, 30 Stat. 548. A Nebraska domiciliary was sued in an Iowa court and suffered a garnishment judgment against his wages. When the Iowa court refused to recognize the Nebraska exemption the Nebraska domiciliary, within four months, filed a petition in bankruptcy. The Bankruptcy Court recognized his exemption, and the bankrupt, in Nebraska, sued to recover the garnished wages. The Supreme Court of Nebraska entered judgment in favor of the bankrupt, and the garnishee appealed, contending that it was protected by the Iowa judgment. The Supreme Court held that under section 67(f) the Iowa judgment was void, and that the bankrupt could take advantage of the section in enforcing the Nebraska exemption recognized by section 6 of the Bankruptcy Act. The Court observed:
Barring exceptional cases, which are specially provided for, the policy of the act is to fix a four months period in which a creditor cannot obtain an advan *867 tage over other creditors nor a lien against the debtor’s property. “All liens obtained by legal proceedings” within that period are declared to be null and void. That universal language is not restricted by the later provision that “the property affected by the ... lien shall be released from the same and pass to the Trustee as a part of the estate of the bankrupt.” It is true that title to exempt property does not vest in the trustee and cannot be administered by him for the benefit of the creditors. But it can “pass to the Trustee as a part of the estate of the bankrupt” for the purposes named elsewhere in the statute, included in which is the duty to segregate, identify and appraise what is claimed to be exempt. He must make a report “of the articles set off to the bankrupt, with the estimated value of each article” and creditors have 20 days in which to except to the Trustee’s report. Section 47(11) and General Orders in Bankruptcy, 17. In other words, the property is not automatically exempted but must “pass to the Trustee as a part of the estate” — not to be administered for the benefit of creditors, but to enable him to perform the duties incident to setting apart to the bankrupt what, after a hearing, may be found to be exempt. Custody and possession may be necessary to carry out these duties and all levies, seizures, and liens, obtained by legal proceedings within four months, that may or do interfere with that possession are annulled, not only for the purpose of preventing the property passing to the trustee as a party of the estate, but for all purposes, including that of preventing their subsequent use against property that may ultimately be set aside to the bankrupt. This property is withdrawn from the possession of the Trustee not for the purpose of being subjected to such liens, but on the supposition that it needed no protection inasmuch as they had been nullified.
229 U.S. at 515-16, 33 S.Ct. at 886-87.
In section 6 of the 1898 Act Congress adopted as federal the exemption laws of the bankrupt’s domicile, thereby making those laws enforceable nationwide. The Hall case construed section 67(f) as protecting such exemptions. Thus as early as 1913 it was settled that Congress had authority under the bankruptcy clause of the Constitution to set aside judicial liens for the purpose of enforcing the provisions of the exemption laws it chose to recognize. That was the state of the law with respect to exempt property and judicial liens when, almost a year later, the Court in Holt v. Henley announced the rule of construction on which the Bank relies. Plainly Holt v. Henley does not speak at all to the appropriate treatment of judicial liens. Their status, as subject to plenary power of Congress, had already been settled. Moreover the legislative history of the present exemption provision makes clear that Congress was well aware of the rule of the Hall case. In the Senate Report on Pub.L. 95-589 it notes that “[t]he debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien ...” and that “[sjubsection (f) gives the debtor the ability to exempt property that the trustee recovers under one of the trustee’s avoiding powers ... ” S.Rep. No. 989, 95th Cong., 2d Sess. 76, reprinted in 1978 U.S.Code Cong, and Ad.News, 5787, 5862. The quoted language must be understood as restating the Hall rule, for it was well known among bankruptcy experts. Indeed in 1936, when the 1898 Act was substantially revised, the analysis of H.R. 12889, 74th Cong., 2d Sess. (1936), referring to the successor of section 67(f), noted expressly that it was intended to preserve the rule established in the Hall case. See 1A Collier on Bankruptcy, f 6.12 at 865 n. 6 (14th ed. 1978). With respect to avoidance of judicial liens Congress was in 1978 doing nothing more than it had done eighty years earlier.
For purposes of the due process clause of the fifth amendment, which is the textual predicate for the Bank’s constitutional argument, the statutory treatment of exemptions from judicial liens in the 1898 and 1978 Acts is indistinguishable. Section 6 of the 1898 Act adopted as a federal standard *868 the exemption law of the debtor’s domicile. Prior bankruptcy acts had adopted uniform federal standards. See Acts of April 4, 1800, § 34, 2 Stat. 19, 30 (1801); Act of March 2, 1867, ch. 176, § 14, 14 Stat. 517, 522 (1868). In 1978 Congress provided a federal standard for exemptions but provided for an election by the debtor between the federal exemption and any more favorable state standard. 11 U.S.C. § 522(b). In each case, however, it was the federal bankruptcy law which made the exemption effective. Under the 1898 Act, as interpreted in Hall, section 67(f) permitted the avoidance of judicial liens in the interest of protecting exemptions recognized by that law. What Congress did in section 522(f)(1) adds nothing of constitutional dimensions, with respect to the avoidance of judicial liens, to what it did in 1898. There is no reason, therefore, to assume that Congress intended that those liens would be affected only prospectively. In order to reach that conclusion one would have to assume a congressional intention to protect some judicial liens which from 1898 to 1978 were unprotected.
III.
The Bank contends that we erred when in our initial decision in Part II of the Ashe opinion we treated their judgment note lien as a judicial lien rather than a security interest or a mortgage. 669 F.2d at 108-09. We reject that contention for two reasons. First, we are convinced that the analysis of that question in our Ashe opinion is sound. The Supreme Court’s remand of that case cannot be understood to have cast it in doubt, because the Holt v. Henley rule would have no application if, as the Bank urges, section 522(f)(1) were inapplicable. Second, even if we had second thoughts about whether the lien of a confession of judgment was not a judicial lien, this panel could not act upon them. The opinion in Gardner v. Pennsylvania Department of Public Welfare, 685 F.2d 106 (3d Cir.), cert. denied, - U.S. -, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), is a square holding that confession of judgment liens are judicial liens. While the judgment in this case is not final, that in Gardner is. Only a majority of a court in banc may overrule it as a precedent in this circuit.
IV.
What we have said thus far suffices to dispose of the Ashe case. There are, however, independent reasons for affirmance in the other appeals. In the Burkholder case the note containing the confession of judgment clause was executed on January 19, 1979. In the Dobslaw case two notes are involved. One was made on October 29,1979 and the other on May 29, 1980. The Bankruptcy Reform Act of 1978 was enacted on November 6, 1978. Thus the judgment notes in the Burkholder and Dob-slaw cases were taken with notice of the provisions of section 522(f)(1) of the Act. The Bank is in no position, in those cases, to urge the application of the Holt v. Henley rule, for whatever interest it acquired was taken subject to the provisions of an already enacted federal statute.
As the dissent points out, even in the Ashe case no specific lien arose until after the enactment of the Bankruptcy Reform Act. The dissent urges that the Holt v. Henley rule applies to liens arising in the so called “gap period” between the passage and the effective date of that Act. Two courts of appeals have already held, however, that creditors acquiring liens in the gap period are not protected by the fifth amendment because they acquired those liens with notice of the future effect of the Act. In re Lawrence Archuleta, United States v. C.I.T. Financial Services, Inc., 707 F.2d 451 (10th Cir.1983); Webber v. Credithrift of America, Inc., 674 F.2d 796 (9th Cir.), cert. denied, - U.S. -, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). Those holdings, which are in our view correct, provide an alternative ground for affirming in Ashe. Thus even if we were convinced that the Holt v. Henley rule had any application to judicial liens, and we are not, we would reach the same result.
B.
In the Bosworth case the note containing a confession of judgment clause was *869 executed on April 17,1978 before the enactment of the Bankruptcy Reform Act. As permitted by Pennsylvania law, it was filed with a County Prothonotary. But whereas in the Ashe case the Bank proceeded, upon default, to obtain a judgment in assumpsit and a writ of execution, the Bank had not, prior to July 13, 1981, when the Bosworths filed their voluntary bankruptcy petition, done anything more than file the note with the Prothonotary. The Security Industrial case and Holt v. Henley deal with liens on specific property. In the Bosworth case the lien never became specific prior to bankruptcy. It was not even as perfected a lien as that in Ashe.
Nonspecific judicial liens have not been regarded as property interests subject to a taking analysis. In the early case of Conard v. Atlantic Insurance Company, 26 U.S. (1 Pet.) 386, 442, 7 L.Ed. 189 (1828), for example, in reviewing the effect of nonspecific judgment liens in Pennsylvania, the Court concluded that a judgment lien did not create a property right in land, but only the opportunity to make a levy. The law in Pennsylvania is to the same effect. Grevemeyer v. Southern Mut. Ins. Co., 62 Pa. 340 (1869) (distinguishing between specific lien of a mortgage and general lien of a judgment). See to the same effect Freeman, Judgments, § 338 & n. 1 (4th ed. 1892). The interests held to be protected from an unconstitutional taking in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), were not general liens, but mortgages on specific property. They created vested rights in specific property. No case has been called to our attention applying a taking analysis to nonspecific liens. Long before the Radford case was decided, however, the Court held that under the provisions of section 70 of the 1898 Act a trustee could enforce for the benefit of general creditors a judicial lien obtained by a specific creditor within four months of bankruptcy. Globe Bank v. Martin, 236 U.S. 288, 35 S.Ct. 377, 59 L.Ed. 583 (1914). If a judgment lien could be “taken” for that purpose, obviously it was not protected by the taking clause of the fifth amendment. Thus we conclude that the Bank’s nonspecific lien arising from a cognovit note would not fall within the ambit of Radford even if that case has any continuing vitality. Certainly the nonspecific lien, not refined to a levy on specific property, is not subject to greater constitutional protection than was the garnishment of a specific debt in Chicago Burlington & Quincy R.R. v. Hall.
V.
The judgments in Dobslaw, No. 82-1434, and Burkholder, No. 82-1435, will be affirmed on the ground that the liens claimed by the Bank were created after the enactment of section 522(f)(1) and are subject to its terms. The judgment in Bosworth, No. 82-1436, will be affirmed on the ground that no lien in specific property was obtained prior to the filing of the bankruptcy petition. The judgment in Ashe will be affirmed on the ground that it is a judgment lien which under Chicago Burlington & Quincy R.R. v. Hall was prior to 1978 subject to divestiture in the Bankruptcy Court in order to effectuate an exemption provided by law, and the enactment of section 522(f) made no change in the law of constitutional significance.

. Simultaneously, the Supreme Court denied certiorari in Gardner v. Pennsylvania Department of Public Welfare, 685 F.2d 106 (3d Cir.), cert. denied, — U.S. -, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982). In the Gardner case we held that liens resulting from confession of judgment notes are judicial liens within the meaning of the Bankruptcy Reform Act, not security interests or statutory liens. That holding binds this panel.