**Betsey Warren LEBBOS, Plaintiff,**

v.

**Daniel J. HEINRICHS, M.D.,
Defendant.**

**No. C–83–3134 WHO.**

United States District Court,
N.D. California.

April 6, 1988.

Betsey Warren Lebbos, San Jose, Cal., in pro per.

John Hartford, Redwood City, Cal. (Counsel at time of hearing), for plaintiff.

Philip L. Pillsbury, Jr., Pillsbury & Wilson, San Francisco, Cal., for defendant.

OPINION AND ORDER

ORRICK, District Judge.

I

This case, untried after five long years, is a tort action charging defendant, Dr. Daniel J. Heinrichs, with medical malpractice. Plaintiff, Betsey Warren Lebbos, herself a lawyer, appearing *pro se*, claims that, after being raped and the victim of an attempted murder in 1973, she suffered

psychogenic amnesia of these events and later suffered post-traumatic stress disorder. Plaintiff further claims that defendant committed medical malpractice by failing to diagnose these conditions and by failing to treat her with hypnosis and the drug amatyl.

At a pretrial conference, scheduled to plan for the sixth trial date, plaintiff moved for yet another continuance of the trial. Conscious of the rights of defendant, whose reputation has been tarnished by plaintiff's allegations and who has not been afforded an opportunity to clear himself as a result of plaintiff's misconduct, unreasonable delay, and failure to follow rules and orders of the Court, and for other reasons hereinafter set forth, the Court is now dismissing the case, *sua sponte*, for lack of prosecution and for failure to follow the Federal Rules of Civil Procedure (hereinafter cited as "Federal Rules"), the Local Rules of the United States District Court for the Northern District of California (hereinafter cited as "Local Rules"), and the orders of the Court.

## A

The pretrial conference was held on March 3, 1988, where plaintiff through her attorney, John Hartford, orally requested a continuance of the trial date for at least three weeks. This request was made without notice to the Court, and with very short notice to defendant, in violation of the Federal Rules and Local Rules. Defendant's counsel, Philip Pillsbury, opposed the request, which was made only four days before the scheduled trial date of March 7, 1988. Defendant's counsel presented the Court with a history of the case, which the Court verified from the records of the litigation, that revealed that this continuance would be the *sixth* continuance of a fixed trial date in this case.

The basis for plaintiff's request is that she is emotionally and psychologically disabled as a result of her severe distress over the illness and impending death of her mother. This has prevented her from being competent either to assist her attorney in the conduct of her case or from conduct-

ing her own case, *pro se*. At the pretrial conference, plaintiff's counsel presented the Court with a signed declaration reciting his knowledge of plaintiff's distressed and disabled state based on his observations of her conduct and of her behavior in failing to cooperate with him to prepare the case over the past three months. Attached to the declaration was a signed letter from Dr. William D. Pierce, a clinical psychologist, who concluded that plaintiff was not currently competent to assist in the conduct of her coming trial. Dr. Pierce described her emotional and psychological disabilities based upon a one-and-three-quarters-hour interview with plaintiff.

At the pretrial conference, the Court ordered the trial to go forward on Monday, March 7, because of the serious prejudice to defendant from yet another delay in this trial, and because of the long history of plaintiff's failure to meet deadlines set by the Court. Plaintiff's counsel sought to withdraw when this ruling was made because he was completely unprepared to conduct the trial as a result of plaintiff's failure to cooperate. The Court allowed Mr. Hartford to withdraw as counsel of record, but appointed him to assist plaintiff in the conduct of the trial.

Putting to one side the failure of plaintiff's counsel to come forward earlier than four days before trial, upon further review of Dr. Pierce's letter, the Court became increasingly concerned about plaintiff's condition. On Monday, March 7, 1988, the Court ordered plaintiff to have an psychiatric competency examination with Dr. Robert Cahan, a Court-appointed psychiatrist, to determine whether or not she was mentally and emotionally competent to conduct her case, or even to assist an attorney in the conduct of the trial. The trial was continued until Tuesday, March 8, 1988, in order for the Court to receive and evaluate the psychiatric opinion of Dr. Cahan.

Dr. Cahan informed the Court on Monday afternoon that, based on a one-and-one-half-hour examination, he had concluded that although plaintiff might be competent to testify as a witness, or assist retained counsel, she was entirely incompetent to

conduct her own case because of her current emotional and mental disability. Based upon Dr. Cahan's opinion, as well as that of Dr. Pierce, the Court determined that there was no choice but to continue the trial. Accordingly, counsel and the parties were informed that the trial would be postponed indefinitely until the Court could determine the appropriate resolution of the matter.

## B

The history of this litigation is a sorry one. The complaint was filed almost five years ago on June 29, 1983. At that time, and throughout most of this litigation, plaintiff appeared *pro se*. The answer was filed on July 29, 1983, and the first status conference held on September 29, 1983. The case was continued for a further status conference by telephone on December 8, 1983, but plaintiff failed to make herself available by phone. Judge Thelton E. Henderson, who had the case at this time, ordered that the status conference be continued until January 24, 1984, and ordered sanctions in the amount of $100 to be paid by plaintiff for her failure to appear. This was just the first incident in what was to be a long history of delay, failure to follow the rules and orders of the court, and misconduct by plaintiff in this seemingly interminable litigation.

### 1. *First Trial Date—January 8, 1985.*

On January 12, 1984, Judge Henderson ordered that the status conference be continued until January 31, 1984, and that the parties cease corresponding. Plaintiff had been attempting to make motions by letter instead of by filing properly-noticed motions. At the January 31 conference, the first trial date was set for January 8, 1985, giving plaintiff nearly a year to prepare the case. Plaintiff filed an amended complaint on June 20, 1984, as well as a demand for a jury trial. Plaintiff did pursue discovery, filed some of the required pretrial papers, and attended the pretrial conference on November 19, 1984. However, plaintiff's narrative statements of the witnesses were so rambling and so full of inadmissible and prejudicial testimony, that Judge Henderson was compelled to order that the direct and cross-examinations of the expert witnesses be submitted in written, question-and-answer form before he would allow them to testify. It was also necessary to exclude many witnesses and exhibits.

Meanwhile, on November 29, 1984, defendant filed a motion to dismiss the action for lack of subject matter jurisdiction on the grounds that there was no diversity of citizenship, that plaintiff was a California resident, and that she had moved to Georgia for only a few months for the purpose of creating diversity of citizenship. Plaintiff failed to appear at the hearing on December 17, 1984, at which argument was to be made on defendant's motion. Judge Henderson continued the case until January 7, 1985, and ordered plaintiff to show cause why she should not be held in contempt and sanctioned. Plaintiff did appear at the show cause hearing, and made excuses for the delay and failure to appear. Judge Henderson decided to vacate the first trial date without sanctioning plaintiff, but there is no transcript of the hearing so this Court does not know the reasons given for plaintiff's conduct.

### 2. *Second Trial Date—September 17, 1985.*

Defendant's motion to dismiss was denied, and the second trial date was set for September 17, 1985, giving plaintiff a nine month respite in which to complete preparation for trial. Plaintiff conducted additional discovery and submitted the pretrial papers that had not yet been filed. On March 4, 1985, Judge Henderson was compelled to enter a protective order to prevent discovery by plaintiff of irrelevant and private information about defendant.

The trial went forward on September 17, 1985, but plaintiff's egregious misconduct, her failure to follow rules and her failure to follow orders of the Court resulted in a mistrial on the sixth day of trial. Plaintiff conducted the examination of witnesses and other matters *pro se* with some assistance in giving her own testimony from Mr. Melvin Belli, who was her lawyer in another lawsuit.

Judge Henderson described plaintiff's misconduct, both as a witness and as her own attorney, in an Order re Mistrial, filed October 8, 1985, as follows:

1. Plaintiff repeatedly and consistently failed to properly respond to questions propounded to her. Her answers repeatedly went beyond the scope of the question, were consistently narrative in nature, and frequently contained improper and gratuitous comments regarding defendant Henrichs (sic) which were prejudicial to defendant.

2. Despite the Court's clear rulings on matters of relevance and admissibility, plaintiff persisted in propounding improper questions, where it was clear that the questions were asked for the express purpose of eliciting information which the Court had already ruled was not admissible.

In addition to plaintiff's conduct seriously prejudicing defendant's case, her conduct necessarily required such forceful supervision by the Court—in the presence of the jury—in attempting to control her behavior that the Court became of the opinion that plaintiff herself could not receive a fair trial before this jury. Plaintiff also made disparaging remarks about Judge Henderson as the trial progressed. Judge Henderson filed an Order of Disqualification on October 7, 1985.

### 3. Third Trial Date—June 16, 1986.

The case was promptly reassigned to this Court on October 9, 1985. At the first status conference on December 6, 1985, this Court faced for the first time the issue of whether the action should be dismissed for lack of prosecution and failure to follow the Federal Rules, Local Rules, and the orders of the Court. Plaintiff filed a declaration on November 12, 1985, requesting a continuance of the date for a new trial for six months, a considerable delay, on the grounds that her expert witnesses would not be available until June 1986 at the earliest. Defendant then raised the issue of a possible involuntary dismissal under Rule 41 of the Federal Rules. Defendant's counsel contended that plaintiff's misconduct at the trial had seriously prejudiced

defendant. He further argued that more serious prejudice would result in any future attempt to retry the case because of the likelihood of repeated misconduct and failure to follow the rules of evidence and civil procedure. Defendant proposed stringent pretrial and trial procedures to ensure that no prejudice to defendant would result, and requested the involuntary dismissal be imposed if plaintiff failed to follow these procedures and the orders of the Court.

This Court carefully weighed this prejudice against the rights of plaintiff to have her day in court, and decided that alternatives short of dismissal would protect defendant from prejudice. Therefore, special discovery procedures were set up to curtail abuses of that process, and the trial was bifurcated as to liability and damages by order of the Court filed January 15, 1986. The Court also set a new trial date for June 16, 1986, to give plaintiff sufficient time to prepare for the trial according to the new procedures.

### 4. Fourth Trial Date—July 14, 1986.

On June 10, 1986, at the pretrial conference for the third trial date, the trial date had to be vacated because of lack of federal funds for jury trials, but it was quickly reset for July 14, 1986. At the pretrial conference, however, plaintiff had informed the Court that she had succeeded in obtaining counsel, and she filed a notice to that effect on June 12, naming Mr. Byron N. Wells as counsel of record for plaintiff. There seemed to be hope for getting the matter resolved by the end of July. Therefore, this Court established strict pretrial and trial procedures to ensure that the trial would go forward without prejudice to defendant.

### 5. Fifth Trial Date—December 8, 1986.

On July 11, 1986, Mr. Wells informed the Court that he wanted a continuance of the trial date because he was having difficulty getting certain witnesses to testify, and because he had decided to withdraw as counsel. Mr. Wells filed moving papers requesting withdrawal on several grounds, the most disturbing being his declaration

that plaintiff was making the conduct of the case unreasonably difficult, was refusing to cooperate with him in the preparation and presentation of the case, was insisting upon improper conduct of the case, and was herself insisting that he withdraw unless he carried out the requested improper actions. Mr. Wells' motion to withdraw was granted at a hearing on August 15, 1986.

At the same hearing, Mr. Alan J. Munn, a receiver for plaintiff appointed by the state court was appointed a receiver for plaintiff in this case. This appointment was made upon the motion of Mr. Munn, and pending final resolution of the dispute between plaintiff and her receiver as to who was entitled to control of this case. Ultimately, this Court found that plaintiff had control of the case, and that jurisdiction in the district court was proper. This Court held a status conference on September 3, 1986, and, after denying a motion to recuse by plaintiff, set the case for trial on December 8, 1986, the fourth trial date.

On November 18, 1986, plaintiff filed for another continuance of the trial date because the withdrawal of her counsel had left her unable to go forward with the trial, and Mr. Munn would not allow her the funds to hire another lawyer. On November 19, 1986, defendant also moved to continue the trial date, and, with both parties desiring a continuance, the Court vacated the trial date and continued the case to February 5, 1987, for a status conference. At the February 5 status conference, the Court learned that plaintiff had filed for personal bankruptcy on December 16, 1986, and further time was needed to determine whether jurisdiction was proper. On July 1, 1987, this Court found jurisdiction in the district court to be proper, and ordered the case to be tried. The Court set the case for a further status conference on August 12, 1987, to give plaintiff time to get her affairs in order.

6. *Sixth Trial Date—March 7, 1988.*

At the August 12 status conference, plaintiff advised the Court that she had managed to retain another attorney, Mr. John Hartford, but that he was not available to conduct the trial until early 1988. This information made a final resolution of the case again seem possible, but the Court was greatly concerned about the continuing prejudice to defendant occasioned by the prolonged delay in the case. The Court ordered a further status conference to be conducted by telephone on August 13, 1987, so that a date certain could be set for trial. The telephone conference was held, and the case was tentatively set for trial on February 1, 1988, because Mr. Hartford was not sure about his spring trial schedule. The Court strongly urged counsel to come up with a firm date as soon as possible. The Court further pointed out that this matter had already dragged on far too long to the prejudice of defendant, and that counsel could pick whatever date they chose, but that this date would be a "date certain," upon which the trial must definitely go forward. The Court made clear that it was allowing a date so many months hence to ensure that the trial would in fact go forward on that date. On September 18, 1987, counsel submitted a letter agreement to reset the trial date for March 7, 1988.

The Court also extended the pretrial and trial procedures that had been imposed on the parties at the pretrial conference on June 10, 1986. At this point in time, there was a great risk of prejudice to defendant and to plaintiff, so this Court determined that carefully tailored rules would be the best alternative to ensure that plaintiff could get her day in court without prejudicing herself or defendant. These procedures included: (1) limitation on the time allowed for the opening statements, presentation of evidence, and closing statements; (2) limitation on the number of witnesses to prevent cumulative, inadmissible, or prejudicial testimony; (3) submission of narrative statements of witnesses to ensure Court control over what testimony would be allowed; (4) determination of admissible exhibits before trial; (5) limitation of the factual issues to be tried to those genuinely in dispute and genuinely relevant to plaintiff's cause of action; and (6) affirmance of Judge Henderson's pretrial orders.

The pretrial conference, originally scheduled for February 23, 1988, was continued to March 3, 1988, at which time, the Court was informed of plaintiff's request to continue the trial date for the sixth time.

C

The record of this case shows the consistent inability of plaintiff over the course of five years to meet the Court's deadlines to move this matter to trial. The seriousness of the five-year delay has been aggravated by plaintiff's own misconduct in failing to appear at scheduled hearings, failing to obey court orders, failing to comply with the rules of evidence at trial, and repeatedly failing to comply with the procedural rules for the making of motions and in pretrial matters. Moreover, plaintiff is now suffering from emotional and psychological disabilities that are so severe as to render her incompetent to conduct her own case now that her counsel has withdrawn. These disabilities also call into question her ability to competently assist counsel, should another attorney be obtained, and her ability to competently testify as a witness to the treatment given by defendant and to the trauma that allegedly caused her illness. Her inability to assist counsel appears to be a continuing one, as the Court has inferred from observing her conduct at hearings and from the reasons proffered by both of her former attorneys in their declarations requesting withdrawal as counsel.

Moreover, with the withdrawal of plaintiff's attorney from the case, it is now doubtful that this case will ever be tried. Even should plaintiff quickly regain her competency to conduct the case, she has previously contended that she lacks the ability to conduct her own trial because she is a state family court practitioner who has no experience with jury trials in federal court, a contention she repeated at the March 3, 1988, pretrial conference. Therefore, it is unclear when, if ever, plaintiff will be competent or able to bring this matter to trial either representing herself or with the assistance of retained counsel.

In addition to these concerns, defendant has been and is continuing to suffer extreme prejudice as a result of the delays in this case. Plaintiff's allegations of malpractice are serious charges that have sullied defendant's professional reputation. Preparation for defense against the claims of malpractice requires extensive expert testimony and is extremely time consuming. This has taken considerable time away from defendant's practice, particularly because many of the trial dates have been vacated at the last minute. Defendant has had to prepare up to the minute of each trial date, and then has not been able to get a resolution of the case. Defendant also suffered a serious heart surgery procedure last year, making continued participation in the case more difficult. All of these factors have seriously prejudiced defendant's ability to adequately defend against plaintiff's claims as well as harming him personally and professionally.

Furthermore, there are increasing problems with preserving the testimony in this case. Memories do fade over time, and it becomes more and more difficult for witnesses to accurately recall the facts of the case. The operative events in this case occurred in 1973 and during the period from 1979 until early 1982. The Court is concerned that plaintiff and defendant cannot properly recall the events of six or more years ago, even with notes and deposition transcripts to refresh their recollections. This could seriously, indeed fatally, prejudice the defense against plaintiff's claims. It also casts doubt upon the possibility of resolving the case on its merits.

In this connection, the Court is extremely disturbed by Dr. Cahan's statement that plaintiff does not have a very good recollection of the 1985 trial. This was only one and a half years ago. Dr. Cahan reported that plaintiff stated that the trial was conducted by Mr. John S. Hartford, and that she could not recall the year in which it took place. In fact, plaintiff, herself, conducted the trial with the assistance of Mr. Melvin Belli; Mr. John Hartford was the lawyer who she had only recently hired in 1987. While it is possible that plaintiff misspoke herself, the remainder of her re-

marks to Dr. Cahan exhibit a spotty recollection of the trial, the rest of this litigation, and the period of defendant's treatment of her, which the Court has compared with the records and evidence already on file in this case.

Finally, with plaintiff in a disabled condition that is of indeterminate length, defendant is facing an exposure to liability of indefinite duration. Although not all of the delays have been the fault of plaintiff, it is clear from the record of the case that plaintiff has been primarily at fault for the delays in the case, including the delay due to the mistrial of the case in 1985, and that plaintiff has been unable to move this case to a resolution for five years.

## II

Based upon all of these facts, this Court finds that it must dismiss this action with prejudice for lack of prosecution on the part of plaintiff and for plaintiff's failure to follow the Federal Rules, the Local Rules, and the orders of the Court. The Court dismisses this action in the exercise of its inherent power to dismiss a case *sua sponte* on these grounds and under the authority set forth in Federal Rule 41. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Henderson v. Duncan,* 779 F.2d 1421 (9th Cir.1986). Dismissal is a harsh penalty that should only be imposed in extreme circumstances, *Raiford v. Pounds,* 640 F.2d 944, 945 (9th Cir.1981), but this case presents exactly the type of extreme circumstances that warrant a dismissal with prejudice.

Under the law of this Circuit, the Court is obligated to weigh several factors to determine whether to dismiss a case for lack of prosecution: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendant; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson,* 779 F.2d at 1423; *Ash v. Cvetkov,* 739 F.2d 493, 496 (9th Cir.1984), *cert. denied,* 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985);

*Mir v. Fosburg,* 706 F.2d 916, 918 (9th Cir.1983); *Citizens Utilities Co. v. American Telephone & Telegraph Co.,* 595 F.2d 1171, 1174 (9th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979). Moreover, a dismissal for lack of prosecution must be supported by a showing of unreasonable delay. *Nealey v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1280 (9th Cir.1980).

From the extensive record of delay and misconduct on the part of plaintiff in this case, this Court finds that there has been an unreasonable delay in this case. Like the plaintiff in *Henderson,* plaintiff here repeatedly disregarded the deadlines set by the Court throughout the course of the litigation. 779 F.2d at 1424. When viewed in isolation, plaintiff's justification for requesting a continuance at this time appears meritorious. Nevertheless, the long history of plaintiff's delays and misconduct renders her request to postpone this trial once again unreasonable and highly prejudicial to defendant.

In addition, the public's interest in expeditious resolution of litigation and the court's need to manage its docket support the dismissal of this case. This case, which is not of any great complexity, has dragged on for nearly five years, and has been a great drain on the Court's time and resources because of the repeated last-minute continuances after full preparation for a jury trial by the Court.

The Court has considered the feasibility of less drastic sanctions and finds that no other solution short of dismissal could remedy the serious prejudice to defendant. After years of delay and misconduct on the part of plaintiff, defendant is now facing a continuance of indefinite duration pending the recovery of plaintiff of her emotional and mental competence and pending the search for a new attorney to represent plaintiff. This is an intolerable and impossible situation for defendant as well as for the Court. *See, Field v. American–West African Line, Inc.,* 154 F.2d 652 (2d Cir. 1946) (suit dismissed where insanity of

plaintiff left defendant facing indefinite exposure to liability).

Since the continuance of the trial on March 7, 1988, the Court has pondered the feasibility and effectiveness of several other alternatives. First, the option of trying the case upon the voluminous depositions, exhibits, and other pretrial submissions was considered. Leaving to one side the deprivation of a trial by jury to both parties, the Court finds that this alternative is not feasible because of the crucial importance of plaintiff's own testimony. In the series of depositions and statements made by plaintiff over the course of this litigation, her evidence about what took place in the 1973 assault, about defendant's treatment of her, and about her subsequent cure, if any, by other doctors has changed considerably. The Court finds it impossible to weigh the credibility of the various statements without hearing her testimony face to face from her present recollection. The Court further finds that trial on the papers would not be a meaningful alternative because the severe prejudice to defendant in this case would remain unaddressed.

The Court also considered the possibility of appointing a guardian *ad litem* to conduct the trial for plaintiff. The Court finds that this alternative is not feasible or meaningful because of the needs and opinions of plaintiff. Plaintiff vigorously opposed the appointment of her state civil court receiver or the bankruptcy court as receivers in charge of this suit. She has repeatedly contended that she wants to be in sole control of this suit because she considers it to be a personal vindication of the injuries to herself and a political vindication of the rights of all rape victims, all women lawyers, and all women psychiatric patients. The alternative of a guardian *ad litem* is also not meaningful because, like the alternative of trial on the papers, the serious prejudice to defendant would not only remain unaddressed, but would be multiplied by more delay occasioned by the appointment process and further trial.

Moreover, the Court has already attempted numerous alternative remedies including the granting of continuances, the establishment of discovery and motion schedules, and the institution of strict procedures for pretrial and trial matters. There is no requirement in the law that every alternative remedy be exhausted before the sanction of dismissal is imposed, *Anderson v. Air West, Inc.,* 542 F.2d 522, 525 (9th Cir.1976), but a court need only explore possible and meaningful alternatives. *Henderson,* 779 F.2d at 1424.

This the Court has done at great length. The prejudice to defendant and the misconduct of plaintiff are so outrageous and so serious that the Court finds that the only possible and meaningful alternative is dismissal with prejudice. *See, Schooley v. Kennedy,* 712 F.2d 372, 373 (8th Cir.1983) (*pro se* litigants dismissed for lack of prosecution of their case in analogous circumstances after only twenty months of delay from the date of the filing of the complaint).

Although there is a strong policy to dispose of cases on their merits, this is the only factor that weighs against a dismissal. The public interest, the Court's interest, the prejudice to defendant, and the existence of no feasible alternatives all demand a dismissal of the case at this time. There has been so great a prejudicial impact upon defendant, which the Court has found from the facts as outlined in this Memorandum Opinion, that this factor must be given great weight in the balance of factors. The prejudice to defendant, added to the other factors in favor of dismissal, are so strong as to override any interest in resolving this case on its merits.

Finally, plaintiff has been put on notice by this Court on more than one occasion that her behavior put her at risk of dismissal for lack of prosecution of her case. At the first status conference after the mistrial on December 6, 1985, the Court expressly considered the issue. The Court further weighed the option of dismissal versus other alternatives in setting up the stringent rules and procedures at the pretrial conference on June 16, 1986. Most recently, the Court made it very clear during the August 13, 1987, status conference that the fifth trial date of March 7, 1988,

was a "date certain" upon which the Court expected this long-delayed matter to go to trial. Finally, plaintiff is herself a lawyer and is very well familiar with the duty of a plaintiff to diligently prosecute her suit or risk dismissal.

The Court has been more than patient with plaintiff in attempting to accommodate her personal difficulties, her inability to obtain counsel, her lack of federal court experience, and her repeated petitions for delay of the case. This Court has granted continuance after continuance in deference to her *pro se* status to allow her ample time to prepare for the trial or to obtain counsel. Plaintiff cannot contend that she has not been afforded many, perhaps too many, opportunities to go forward with her case. Many federal courts in this Circuit and elsewhere have dismissed individual plaintiffs for far less delay and failure to follow orders and rules than has been evident in this case. *Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986) (Title VII plaintiff dismissed out after history of delay and failure to follow rules over *only* fourteen months); *Schooley*, 712 F.2d at 373 (Eighth Circuit approves dismissal of *pro se* litigants after history of delay and failure to follow court's pretrial orders over *only* twenty months); *Medeiros v. United States*, 621 F.2d 468 (9th Cir.1980) (plaintiff's Federal Tort Claims Act suit dismissed after history of delay over *only* twenty-four months); *Nealey*, 662 F.2d 1275 (9th Cir.1980) (plaintiff's tort action dismissed after history of delay over *only* three years).

For all of the above reasons,

IT IS HEREBY ORDERED that:

1. The facts set forth in this Memorandum Opinion are hereby incorporated as findings of fact into the findings of fact set forth in paragraphs 2 and 3.

2. The Court finds that: (a) the delay in this case has been unreasonable; (b) this delay is primarily the fault of plaintiff; (c) plaintiff has failed to follow many orders of the Court and many Federal Rules and Local Rules; (d) serious prejudice has been caused to defendant as a result of plaintiff's unreasonable delay and failure to follow the rules and the orders of the Court; (e) the Court's interest in managing its docket and the public's interest in the expeditious disposition of litigation have been harmed by plaintiff's conduct; and (f) all of these factors outweigh the public interest in the disposition of cases upon their merits.

3. This Court finds that there are no feasible, possible, meaningful, or reasonable alternatives to dismissal with prejudice, and that only such dismissal of the case will remedy the serious prejudice caused to defendant by plaintiff's conduct.

4. This action is dismissed in its entirety with prejudice for lack of prosecution and failure to follow the Federal Rules, Local Rules, and the orders of the Court on the part of plaintiff.